916 A.2d 440

LIBERTY SURPLUS INSURANCE CORPORATION, INC., PLAINTIFF–RESPONDENT, v. NOWELL AMOROSO, P.A.; NOWELL AMOROSO & MATTIA, P.A.; NOWELL AMOROSO KLEIN BIERMAN, P.A.; HENRY J. AMOROSO; CHRISTOPHER W. MCGARRY; WILLIAM C. SOUKAS; DANIEL C. NOWELL, ESQ.; JEANNE M. DAMGEN, ESQ.; LINDA DUNNE, ESQ.; WILLIAM R. DELORENZO, JR., ESQ.; HERBERT C. KLEIN, ESQ.; WILLIAM D. BIERMAN, ESQ.; MARK MATTIA, ESQ.; AND RICH-

ARD J. KAPNER, ESQ., DEFENDANTS–APPELLANTS, AND
THOMAS MATARESE; BACHELORS I TAVERN, INC., T/A
SCANDALS AND JOHN DOES ESQS. 1–10, A FICTITIOUS DES-
IGNATION FOR PRESENTLY UNKNOWN LICENSED ATTOR-
NEYS, PROFESSIONAL AND/OR UNKNOWN PERSONS OR
ENTITIES, DEFENDANTS.

Argued October 10, 2006—Decided February 28, 2007.

438

*Christopher J. Carey,* argued the cause for appellants (*Graham, Curtin & Sheridan,* attorneys; *Mr. Carey, David M. Blackwell* and *Matthew P. McGovern,* on the briefs).

*Elliott Abrutyn,* argued the cause for respondent (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski,* attorneys; *Mr. Abrutyn* and *Shaji M. Eapen,* on the brief).

Justice WALLACE, JR., delivered the opinion of the Court.

In this declaratory judgment action, the trial court granted summary judgment in favor of the insurer, Liberty Surplus Insurance Corp., Inc. (Liberty). In an unpublished, per curiam decision, the Appellate Division affirmed. We granted certification, in part, to determine whether summary judgment may be granted in favor of an insurer when an application for insurance contains a subjective question whether the insured had knowledge of any circumstance, act, error, or omission that could result in a legal malpractice claim against it and the insured answers "no." We affirm the grant of summary judgment in favor of Liberty.

## I.

### A.

In June 2003, Thomas Matarese, Larry Kolczycki, and Bachelor I Tavern, Inc., t/a Scandals (collectively referred to as Matarese), filed suit against defendants, the law firm of Nowell Amoroso Klein Bierman, P.A. and several of its attorneys (collectively referred to as Nowell Amoroso), alleging legal malpractice in connection with Nowell Amoroso's representation of Matarese in an action against the City of East Orange and others (East Orange defendants). Nowell Amoroso notified its insurer, Liberty, of the malpractice claim and sought coverage under the insurance policy. On July 21, 2003, Liberty disclaimed coverage, asserting that Nowell Amoroso "had a reasonable basis to believe that [it] had breached a professional duty or to foresee that a claim would be made against" it when it completed the application for claims-made insurance.

Liberty then filed a declaratory judgment action against Nowell Amoroso, seeking a determination that Matarese's legal malpractice claim was not covered under the claims-made policy with Nowell Amoroso. On November 4, 2003, Nowell Amoroso moved for summary judgment. In its statement of material facts, Nowell Amoroso outlined the history of the prior litigation against the East Orange defendants and attached the various trial and appellate court decisions.

Liberty, in turn, filed a cross-motion for summary judgment, included additional undisputed facts in support of its motion, and replied to Nowell Amoroso's statement of material facts. In its July 21, 2003 letter to Nowell Amoroso disclaiming coverage, Liberty reiterated the policy "condition that provides that there is coverage for an act that happens prior to the policy period if[ ] the Insured had no reasonable basis to believe that the insured had breached a professional duty or to foresee that a claim would be made against the Insured." (Formatting altered). Further, Liberty declared that "[t]he letter disclaiming coverage state[d] . . .

that Matarese's malpractice claim [was] not covered under the policy because as of the February 2, 1999 Appellate Division decision, Nowell Amoroso ha[d] a reasonable basis to believe that it had breached a professional duty or foresee that a claim would be made against" it. Liberty also asserted that at the time Nowell Amoroso completed its insurance application, Nowell Amoroso "had knowledge of a circumstance, act, error or omission that could result in a professional liability claim" against it.

In opposition to Liberty's summary judgment cross-motion, the individual attorneys at Nowell Amoroso filed certifications that stated, in part:

> On July 15, 2002, when Nowell Amoroso Klein Bierman, P.A. submitted the application for malpractice insurance to Liberty Surplus Insurance Corporation, Inc., I did not have knowledge of, or a reasonable basis to believe that, any circumstances, act, error or omission on the part of any past or present attorneys of the firm occurring in the course of the firm's representation of Thomas Matarese and Bachelor I Tavern, Inc. t/a Scandals in a litigation against the City of East Orange, could or would result in a professional liability claim against Nowell Amoroso Klein Bierman, P.A.
>
> I did not have knowledge of or a reasonable basis to believe that, any circumstances, act, error or omission on the part of any past or present attorneys of the firm occurring in the course of the firm's aforementioned representation could or would result in a professional liability claim against Nowell Amoroso, Klein, Bierman P.A., until after June 6, 2003[,] the date when the Complaint for legal malpractice was filed in the action entitled *Thomas Matarese v. Nowell Amoroso Klein Bierman, P.A., et al.*, Docket No. ESX–4921–03.
>
> [(Formatting altered).]

### B.

We digress from the procedural history to summarize the earlier action against the East Orange defendants that is the foundation of the legal malpractice complaint against Nowell Amoroso. Matarese owned and operated a night club in East Orange known as Charlie's West. Matarese changed the name of the club to Scandals and sought to expand its clientele. By January 1992, Scandals was a thriving club and posed a threat to a competitor club that was partly owned by a man who was also Director of Property Maintenance for East Orange (Director). Matarese believed that the Director used his influence to encourage the

police to harass Scandals's patrons. Matarese also claimed that other city agencies engaged in numerous unannounced inspections of his club during peak hours to interfere with the operation of his club in order to increase business for the Director's club.

By April 1992, there was a substantial decline in the patronage at Scandals. Matarese filed a complaint with the Internal Affairs Unit of the East Orange Police Department against a police lieutenant, alleging harassment and extortion. Matarese also filed a Notice of Claim against East Orange in July 1992. Scandals subsequently closed in September 1992.

Because Matarese's original attorney was no longer available to represent him, Matarese sought the assistance of Nowell Amoroso to represent him on a contingency basis. Nowell Amoroso agreed, but for unknown reasons, the law firm did not file the complaint against the East Orange defendants until May 23, 1994. During the discovery period, the East Orange defendants failed to provide discovery, resulting in the suppression of their answers and defenses. Following a proof hearing, the trial court awarded Matarese damages in the amount of $400,000.

The East Orange defendants appealed. In a reported decision, the panel reversed and remanded the case. *Kolczycki v. City of E. Orange*, 317 *N.J.Super.* 505, 520, 722 *A.*2d 603 (App.Div.1999). The panel reasoned that because Matarese's proofs might be read to mean that the cause of action arose prior to May 22, 1992, the trial court needed to determine whether Matarese's filing of the suit on May 23, 1994, was beyond the two-year statute of limitations. *Id.* at 518, 722 *A.*2d 603. The panel held that, on remand, "the trial court must determine whether any tortious conduct perpetrated by defendants against [Matarese] that occurred on or after May 22, 1992 constitute[d] a tort that can stand on its own for the maintenance of a suit against defendants without any need to refer to prior conduct of defendants to establish liability." *Id.* at 519–20, 722 *A.*2d 603.

On remand, the trial court found that Matarese failed to establish that the East Orange defendants' conduct after May 22, 1992,

was the proximate cause of any damages to Matarese. Consequently, the trial court entered judgment in favor of the East Orange defendants and dismissed Matarese's suit because it was not timely filed.

Matarese appealed the trial court's dismissal. He argued, in part, that the remand was "for proofs as to the statute of limitations issue only" and that he established "that the defendants perpetrated tortious conduct on and after May 22, 1992." Matarese asserted that the trial court's finding that he had failed to prove the existence of damages was against the weight of the evidence. In an unpublished opinion dated June 12, 2002, the Appellate Division affirmed, finding "sufficient evidence, or lack of same, in the record to support [the trial court's] conclusions."

## C.

On July 15, 2002, approximately one month after the Appellate Division's decision in Matarese's appeal, Nowell Amoroso submitted an insurance application to Liberty for claims-made coverage. One of the questions on the application asked whether "any lawyer to be insured under this policy[ ] [had] knowledge of any circumstance, act, error or omission that could result in a professional liability claim[.]" Nowell Amoroso responded "no" to that question.

Liberty then issued Nowell Amoroso a "claims made and reported" policy, effective for the period from July 21, 2002, to July 21, 2003. The policy covered acts, errors, or omissions prior to the policy period, so long as certain conditions were met. One of those conditions was that "the Insured had no reasonable basis to believe that the Insured had breached a professional duty or to foresee that a claim would be made against the Insured." If the insured could not satisfy that condition, the policy did not provide coverage for any claims arising from acts, errors, or omissions prior to the policy period.

## D.

We return now to the procedural history of the declaratory judgment action. Recall that, Nowell Amoroso and Liberty had each filed a motion for summary judgment. Nowell Amoroso sought a declaration of coverage, and Liberty sought a declaration of no coverage. The trial court granted summary judgment in favor of Liberty, reasoning as follows:

> While the [c]ourt recognizes that the February order from the Appellate Division ... remanded the case to [the] trial court with specific instructions, an integral part of the [c]ourt's finding is that the occurrences prior to [the] May '92 cutoff were to be time barred.
>
> ... The no cause of action entered by the trial court on remand coupled with the Appellate Division decision affirming that no cause in June of 2002 provided ample notice of a possible cause of action for malpractice. [Matarese] ha[d] retained [Nowell Amoroso] one year prior before the case was filed, a reasonable person would have expected to know a cause of action existed, at the very least, at the second Appellate Division decision on June 12th, 2002. By [its] own admission, [Nowell Amoroso] submitted [its] application to Liberty Surplus for professional liability insurance on July 15th, 2002, a little over a month after the second Appellate Division decision.
>
> The fact that [Nowell Amoroso was] pursuing another appeal to the [S]tate Supreme Court does not insulate [it] from the fact that [it] had a reasonable basis at that point to believe that there was a potential claim.

Nowell Amoroso appealed. While the appeal was pending, Nowell Amoroso sought to supplement the record with information that had been disclosed during the course of discovery in the underlying malpractice action. Specifically, Nowell Amoroso sought to introduce an expert's report that provided an analysis of the underlying matter and opined that Nowell Amoroso did not commit malpractice.

After denying the motion to supplement the record, the Appellate Division found that a subjective analysis of Nowell Amoroso's knowledge at the time it completed the insurance application was required. Nevertheless, the panel upheld the grant of summary judgment in favor of Liberty, explaining that

> [c]overage, under the policy, was conditioned not only on foreseeing a possible malpractice claim, but also on the insured having no reasonable basis to believe that any deviation from a pertinent standard of legal care had occurred. When a trial court and two appellate division decisions indicate that a statute of limitations

has been missed, no reasonable fact-finder could conclude the firm honestly conceived there was no plausible basis to believe that [it] had breached a professional duty.

    ... [W]e hold that, under the unique circumstances of this case, the law firm could not have conceived that there was no reasonable basis to believe a professional duty had been breached. When there is a single, unavoidable resolution of a factual dispute, summary judgment is appropriate.

[(Citations omitted).]

We granted Nowell Amoroso's petition for certification. 186 *N.J.* 255, 893 *A.*2d 722 (2006).

## II.

Nowell Amoroso asserts that the Appellate Division rightly concluded that a subjective standard governs the determination of whether the law firm knew that it had breached a professional duty or could foresee that a claim would be made against it, and that summary judgment should not have been granted because application of a subjective standard requires a fact-finder to decide the issue. Further, Nowell Amoroso adds that the Appellate Division erred in denying its motion to supplement the record with the expert's report.

Liberty agrees that a subjective standard governs, but counters that the self-serving attorney certifications submitted by Nowell Amoroso in opposition to the motion for summary judgment did not create a genuine issue of material fact because Nowell Amoroso knew it had breached a professional duty. Therefore, Liberty concludes that we should affirm the judgment of the Appellate Division.

## III.

### A.

As a preliminary matter, we note that both parties filed motions for summary judgment. Because the trial court granted judgment in favor of Liberty, we must consider the facts in a light most favorable to Nowell Amoroso. The inquiry is " 'whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 536, 666 *A.*2d 146 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 *U.S.* 242, 251–52, 106 *S.Ct.* 2505, 2512, 91 *L.Ed.*2d 202, 214 (1986)).

We recognized in *Brill* that although this process involves "a type of evaluation, analysis and sifting of evidential materials[,] . . . [it] is not the same kind of weighing that a factfinder (judge or jury) engages in when assessing the preponderance or credibility of evidence." *Ibid.* Moreover, we explained that a " 'genuine' issue of material fact" does not exist, if there is only one "unavoidable resolution of the alleged disputed issue of fact." *Id.* at 540, 666 *A.*2d 146 (citation omitted).

To be sure, an application for insurance may contain both objective and subjective questions. In the present case, we agree with the Appellate Division's conclusion that the question on the application that asked if any insured had "knowledge of any circumstance, act, error or omission that could result in a professional liability claim" was subjective in nature. We note, however, that in contrast to the subjective question on the application, the policy language that "the Insured had no reasonable basis to believe that the Insured had breached a professional duty or to foresee that a claim would be made against the Insured" appears to be objective. Because the application of a subjective standard is more rigorous for Liberty to meet, and because both parties urge that a subjective standard governs, we apply a subjective standard concerning Nowell Amoroso's knowledge when it applied for malpractice insurance. We also apply the subjective standard in the application based on the well-settled principle that insurance policy interpretation should be construed against the insurer. *Proformance Ins. Co. v. Jones*, 185 *N.J.* 406, 415, 887 *A.*2d 146 (2005).

A subjective question " 'seek[s] to probe the applicant's state of mind.' " *Ledley v. William Penn Life Ins. Co.*, 138 *N.J.* 627, 636,

651 *A.*2d 92 (1995) (citation omitted). Generally, when the "subjective elements of willfulness, intent or good faith of the moving party are material to the claim or defense of the opposing party, a conclusion from papers alone that palpably there exists no genuine issue of material fact will ordinarily be very difficult to sustain." *Judson v. Peoples Bank & Trust Co.,* 17 *N.J.* 67, 76, 110 *A.*2d 24 (1954). Despite that admonition, we have approved our Appellate Division's conclusion that subjective intent may not be controlling when the undisputed facts reveal otherwise. *Morton Int'l, Inc. v. Gen. Accident Ins. Co. of Am.,* 266 *N.J.Super.* 300, 330, 629 *A.*2d 895 (1991), *aff'd,* 134 *N.J.* 1, 629 *A.*2d 831 (1993), *cert. denied sub nom. Ins. Co. of N. Am. v. Morton Int'l, Inc.,* 512 *U.S.* 1245, 114 *S.Ct.* 2764, 129 *L.Ed.*2d 878 (1994).

In *Morton,* both parties filed motions for summary judgment. *Id.* at 319, 629 *A.*2d 895. The factual issue was whether the insured intended to harm the environment, in which event the insurers would not provide coverage under various liability insurance policies that limited coverage to accidental injuries. *Ibid.* There was substantial documented evidence of environmental pollution over an extended period of time. *Id.* at 332, 629 *A.*2d 895. In opposition to that evidence, Morton submitted the affidavit of a former general manager certifying "that at no time during our ownership did we intend or expect that our manufacturing processes, our effluent treatment process or our disposal system were then harming the environment, nor did we intend or expect that they would ever do so." *Id.* at 333, 629 *A.*2d 895 (internal quotations omitted). The trial court granted summary judgment in favor of the insurers, and the Appellate Division affirmed, concluding that "as a matter of law, on this factually undisputed record, [Morton] intended to cause harm to the environment." *Id.* at 332, 629 *A.*2d 895. The panel found that "the character of the act can be the basis of an inference that the insured intended the injury." *Id.* at 329–30, 629 *A.*2d 895. The panel then reasoned that

[t]his principle makes the actor's testimony about subjective intent less than controlling but allows a judge to conclude, from the circumstances of the act, what

the actor's real intent was, despite verbal protestations to the contrary. It restrains the court from ignor[ing] reality and accepting the testimony of the insured that he did not intend to injure plaintiff despite the fact that a reasonable analysis [of the circumstances] requires the conclusion that from the very nature of the act harm must have been intended.

[*Id.* at 330, 629 A.2d 895 (internal citations and quotations omitted).]

The panel concluded that the trial court would have had to "ignore[ ] reality to conclude that plaintiff's predecessors did not know that the mercury and its effluent w[ere] harmful to the land over which it coursed and the waters into which it fell." *Id.* at 334, 629 A.2d 895.

In a case factually similar to the present case, the Appellate Division found that the evidence was so one-sided that the insurer must prevail as a matter of law. *Liebling v. Garden State Indem.,* 337 *N.J.Super.* 447, 451, 767 A.2d 515 (App.Div.), *certif. denied,* 169 *N.J.* 606, 782 A.2d 424 (2001). There, Scott Liebling, an attorney, represented Anthony Barrett who suffered injuries when a United States Postal vehicle collided with Barrett's car. *Id.* at 450–51, 767 A.2d 515. Previous counsel had filed a complaint in the federal district court on behalf of Barrett, but improperly named the United States Postal Service as the defendant, as opposed to the United States Government. *Id.* at 451, 767 A.2d 515. After Liebling failed to amend the complaint in the pre-scribed period of time, the United States Postal Service moved to dismiss the complaint for lack of jurisdiction. *Id.* at 451–52, 767 A.2d 515. The district court denied Liebling's motion to amend the complaint to name the United States Government as the proper party and granted the defendant's motion to dismiss the complaint. *Id.* at 452, 767 A.2d 515. Following that action, Liebling applied for a "claims-made malpractice insurance policy" from Garden State Indemnity Company (Garden State). *Id.* at 450, 767 A.2d 515. The application asked, " '[i]s the firm aware of any circumstances, or any allegations or contentions as to any incident which may result in a claim being made against the firm ...?' " *Id.* at 451, 767 A.2d 515. Liebling answered "no" to that question, and Garden State "issued a claims-made malpractice

insurance policy to [Liebling]." *Id.* at 450–51, 767 *A.*2d 515. The policy read in relevant part:

> We do not insure here any claim . . . of which:
>
> . . . .
>
> Any insured, at the inception date of this contract, knew or reasonably could have foreseen that any such act, error, or omission might be expected to give rise to a claim otherwise insured here.
>
> [*Id.* at 459, 767 *A.*2d 515.]

Subsequently, Barrett sued Liebling for malpractice. *Id.* at 450, 767 *A.*2d 515. Liebling then sought coverage from Garden State, which Garden State denied. *Ibid.*

Liebling commenced a declaratory judgment action against Garden State. *Ibid.* Both sides moved for summary judgment. *Ibid.* In opposition, Liebling certified that " '[a]t the time I completed the application for insurance with Garden State Indemnity Company, I had not received a copy of [the district court's] [o]rder [and opinion] despite my request for same.' " *Id.* at 452, 767 *A.*2d 515. Liebling acknowledged that he contacted the district court's chambers and was informed that the Postal Service's " '[m]otion had been granted and that [his] Motion to Amend the Complaint had been denied.' " *Ibid.* The trial court granted summary judgment in favor of Garden State. *Id.* at 463, 767 *A.*2d 515. On appeal, the Appellate Division affirmed the trial court's decision. *Ibid.* The panel explained that despite Liebling's certifications, Liebling could not have honestly believed that he was secure from a claim, and, therefore, Garden State was justified in denying coverage. *Id.* at 464–65, 767 *A.*2d 515.

### B.

We turn now to apply those legal tenets to the present case. Our review of the record persuades us that the Appellate Division properly concluded that in light of the undisputed material facts, summary judgment was properly granted in favor of Liberty. In opposition to the cross-motion for summary judgment, Nowell Amoroso submitted affidavits in which former and current attorneys of the law firm merely denied Liberty's asser-

tions. However, Nowell Amoroso knew that Matarese's claim against the East Orange defendants had been dismissed based on the failure to file the complaint within the statute of limitations period. In light of the events that had transpired, those affidavits were insufficient to create a genuine issue of material fact. Even when credibility may be an issue, "[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact." *Brill, supra,* 142 *N.J.* at 540, 666 *A.*2d 146 (citation omitted).

Stated differently, the trial court would have had to ignore reality to conclude that Nowell Amoroso did not have knowledge that a claim might be filed against it when faced with a trial court and two Appellate Division decisions that Nowell Amoroso had missed the statute of limitations for Matarese's claim against the East Orange defendants. We conclude that because the evidence in the record "is so one-sided[,]" Liberty must prevail as a matter of law. *Ibid.* (internal quotations omitted). We affirm the grant of summary judgment in favor of Liberty denying coverage to Nowell Amoroso.

## C.

█ Nowell Amoroso adds that it was premature to grant summary judgment because discovery was not complete as to the information presented by Matarese, which bears directly upon whether it believed a suit would be filed against it. Further, Nowell Amoroso argues that discovery was needed to determine whether there even existed a viable claim against the East Orange defendants in the underlying litigation.

█ We reject that contention. Nowell Amoroso filed a motion for summary judgment first, and Liberty followed with its cross-motion. When both parties to an action "move[ ] for summary judgment, one may fairly assume that the evidence was all there and the matter was ripe for adjudication." *Morton, supra,* 266 *N.J.Super.* at 323, 629 *A.*2d 895. Moreover, Nowell Amoroso was

not denied the opportunity to conduct discovery of information possessed by any party and the information for which it sought discovery was essentially in its control. Nowell Amoroso had filed the previous complaint against the East Orange defendants and was in the best position to evaluate that claim.

Nor do we read the several cases cited by Nowell Amoroso in support of its argument to require a different result here. Factually, the present case differs from those cases. *See Crippen v. Cent. Jersey Concrete Pipe Co.*, 176 *N.J.* 397, 409, 823 *A.*2d 789 (2003) (finding error in granting summary judgment because opposing party sought discovery); *see also Laidlow v. Hariton Mach. Co.*, 170 *N.J.* 602, 619, 790 *A.*2d 884 (2002) (finding error in granting employer's motion for summary judgment because discovery was not complete); *Wilson v. Amerada Hess Corp.*, 168 *N.J.* 236, 253, 773 *A.*2d 1121 (2001) (concluding that trial court erred in granting summary judgment for defendant without first allowing plaintiffs discovery of information they sought); *Davila v. Cont'l Can Co.*, 205 *N.J.Super.* 205, 207–08, 500 *A.*2d 721 (App.Div. 1985) (finding that plaintiff's action against employer for discovery purposes should proceed, but after discovery was complete, defendant would be entitled to dismissal). In short, unlike the cases cited above, Nowell Amoroso did not seek discovery when the opposing motion for summary judgment was filed, but rather was the first party to file a motion for summary judgment. Therefore, a remand for further discovery is not required under these facts.

IV.

The remaining issue is whether the Appellate Division abused its discretion in denying Nowell Amoroso's motion to supplement the record with information obtained during the course of the pending malpractice action. Prior to oral argument before the Appellate Division, Nowell Amoroso sought to supplement the record to include an expert's report that concluded that it "did not deviate from the standard of care applicable to attorneys in New Jersey in connection with its representation of [Matarese] in the

underlying litigation against the East Orange [d]efendants," and its "representation did not result or proximately cause any damages to [Matarese]."

Our rules provide that "[t]he record on appeal shall consist of all papers on file in the court or courts or agencies below, . . . and all papers filed with or entries made on the records of the appellate court." *R.* 2:5–4. Our appellate courts will not ordinarily consider evidentiary material that is not in the record below. *Cipala v. Lincoln Technical Inst.,* 179 *N.J.* 45, 52, 843 *A.*2d 1069 (2004). Although *Rule* 2:5–5 provides for correction or supplementation of the record, supplementation is only provided for "an appeal from a state administrative agency[ ] if it appears that evidence unadduced in the proceedings below may be material to the issues on appeal." *R.* 2:5–5(b). There is no similar direction for supplementation for an appeal from a trial court judgment.

■ Nevertheless, we conclude that even though *Rule* 2:5–5 does not include an express provision for the supplementation of a trial court record, an appellate court has the inherent power to address such a motion. *See R.* 2:9–1(a) ("The appellate court may at any time entertain a motion for directions to the court or courts or agencies below or to modify or vacate any order made by such courts or agencies or by any judge below."); *see, e.g., Musto v. Vidas,* 333 *N.J.Super.* 52, 67, 754 *A.*2d 586 (App.Div.) (remanded to trial court to consider motion to supplement while appeal was pending), *certifs. denied,* 165 *N.J.* 607, 762 *A.*2d 221 (2000).

■ Although we have not previously addressed this issue, we note that in the context of an application to supplement the record from an appeal from an administrative agency pursuant to *Rule* 2:5–5(b), our Appellate Division has provided guidance in determining when the court should grant such a motion. In *In re Gastman,* 147 *N.J.Super.* 101, 370 *A.*2d 866 (App.Div.1977), the panel found the factors to be considered on a motion to supplement include (1) whether at the time of the hearing or trial, the applicant knew of the information he or she now seeks to include

in the record, and (2) if the evidence were included, whether it is likely to affect the outcome. *See id.* at 114, 370 *A.*2d 866.

■ We find those factors relevant to a fair determination of whether to grant a motion to supplement the record on appeal. Although it does not appear that Nowell Amoroso possessed the expert's report at the time the summary judgment motion was granted, that report was solely within Nowell Amoroso's control. Nowell Amoroso could have sought that report prior to filing its own motion for summary judgment. Thus, Nowell Amoroso fails to satisfy this factor. Moreover, in light of the undisputed evidence, the expert's report was not likely to affect the outcome.

Therefore, we find no abuse of discretion in the Appellate Division's denial of Nowell Amoroso's motion to supplement the record.

## V.

The judgment of the Appellate Division is affirmed.

Justices LONG, ZAZZALI, ALBIN, and RIVERA–SOTO join in Justice WALLACE'S opinion. Justice LaVECCHIA did not participate.

*For affirmance*—Justices LONG, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—5.

Opposed—None.