**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4878-17T2

IN THE MATTER OF THE
ESTATE OF ANNE L. JELIN,

     Deceased.

_____

Argued September 18, 2019 – Decided October 3, 2019

Before Judges Whipple, Gooden Brown, and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. CP-000286-2015.

Ronald P. Colicchio argued the cause for appellant Frederick T. Jelin (Saul Ewing Arnstein & Lehr, LLP, attorneys; Ronald P. Colicchio, on the briefs).

Jordan D. Weinreich argued the cause for respondents Deborah Newmyer, Abraham Jelin, and Sarah Jane Jelin (Sherman Wells Sylvester & Stamelman, LLP, attorneys; Julian W. Wells and Jordan D. Weinreich, of counsel; Matthew F. Chakmakian, on the briefs).

Begley Law Group, PC, attorneys for respondents Martin Jelin, Joshua Jelin, and James Jelin, join in the brief of respondents Deborah Newmyer, Abraham Jelin, and Sarah Jane Jelin.

PER CURIAM

Frederick T. Jelin is the brother of Anne L. Jelin. He appeals from a January 8, 2018, order granting Anne's siblings, nieces, and nephews (collectively, respondents) summary judgment dismissal of his complaint challenging Anne's[1] will and denying his motion for summary judgment. He also appeals from a May 18, 2018, order denying his request for counsel fees. We affirm.

We summarize the facts from the record. They are set forth in greater detail in the motion judge's decisions. In 2009, Anne's sister, Sarah Jane, contacted an attorney to prepare Anne's will. Sarah Jane knew this attorney because their children attended school together. Anne met with the attorney without any of the respondents present and gave specific instructions regarding charitable and other specific bequests she wished to make to a personal aide and family members, excluding Frederick. During the next four years, Anne's estate attorney prepared several draft wills, all of which continued to exclude Frederick.

---

[1] We utilize the parties' first names for ease of reference and because some of them share a common surname. We intend no disrespect.

Ultimately, Anne executed two of the wills drafted by her attorney. The first, executed on October 14, 2010, contained charitable bequests she previously identified and specific bequests to each of her nieces and nephews, except Frederick's fourth child, a son born of another relationship following a divorce from his first wife. The will stated Frederick's three children from his first wife would be granted a one-fourth share of the estate's residuary, with the other three-fourths benefitting Anne's siblings, Deborah and Abraham, excluding Frederick. Additionally, the will paid Frederick's children from the first marriage the value of their shares in Karnak, a family corporation, from other assets, rather than give them stock as the other beneficiaries received.

Anne executed another will on February 18, 2013, which included similar charitable bequests and specific bequests for Anne's nieces and nephews. Unlike the 2010 will, this one provided Frederick's children from his first marriage would receive specific bequests of cash in addition to their collective one-fourth share of the residuary. Again, Frederick would not inherit under the 2013 will.

When Anne died, Frederick filed a complaint challenging the will. He alleged Anne, who had Turner syndrome, possessed a low IQ, and suffered a series of strokes, lacked testamentary capacity to execute the will, and was unduly influenced by her siblings. Following the completion of fact and expert

discovery, respondents filed a motion for summary judgment and Frederick cross-moved for summary judgment.

The motion judge issued a comprehensive oral decision granting respondents' motion for summary judgment and denying Frederick's cross-motion. The judge concluded there were no material facts in dispute regarding whether Anne lacked capacity or was unduly influenced to disinherit Frederick.

On the issue of testamentary capacity, the judge credited the unrebutted testimony of the attorney who prepared Anne's wills and will execution witnesses who stated Anne had capacity to understand what she was signing. The judge found the evidence established Anne understood the nature of her property and its particular disposition, recollected the persons who were the natural objects of her bounty, and comprehended the interrelatedness of those factors. Specifically, he stated:

> [Anne] was aware that she had money. She was aware that she had assets, as evidenced by the fact that she took vacations, that she bought gifts. And — the testimony was she pretty much bought whatever she wanted. And she certainly knew enough about her assets and the natural objects of her bounty. She left a bequest to JESPY House. . . . . JESPY House is an organization . . . in South Orange, and . . . they provide support for people who are developmentally disabled. And she also was actively involved with the American Cancer Society. And again, . . . the relationship . . . goes back to her brother Billy, who died from cancer.

A-4878-17T2

So it seems to me that she also understood who . . . were the natural objects of her bounty. . . . Deborah . . . took care of her and made decisions for her. Sarah took care of her finances. Abraham got involved medically from time to time. And the testimony is that – again, going back to understanding her assets – is that according to [Erin] Ruiz, her caretaker, that she used a credit card and she was a bargain hunter and she understood – she was a shopper, so to speak, and she . . . enjoyed that.

. . . [A]s far as the natural objects of her bounty is concerned, . . . in the 2013 will, she's focused on Deborah and on Abraham and on Sarah. And again, . . . they are the natural objects of her bounty based upon their relationship and based upon the fact that they are her support group. And it's clear that she had a fondness for Fred[erick]'s children, and . . . for his first wife. She expresses that. And she wants to take care of them because she cares for them. And she disinherits her brother, it's true, and disinherits her nephew, but not the rest of her family. So, that, to me, shows that she understood who was the natural objects of her bounty. It also confirms that the testimony that's been offered, that she wasn't happy with her brother. That doesn't mean she didn't love him, she just wasn't happy with him and she didn't want him to participate . . . in her estate.

The judge found Frederick's claims, namely, that Anne was incapable of understanding complex documents and suffered from depression, insufficient to overcome the presumption of capacity.

A-4878-17T2

The judge rejected the testimony of Frederick's expert because the expert challenged the process of the will execution, but did not address Anne's capacity. The judge concluded the expert

> speculated throughout his deposition as to the procedure that should have been used when dealing with a low IQ person. . . . But there's no requirement in any statute, there's no requirement in any case law, and he doesn't point to any requirement even in his field . . . dealing with incapacity which would require . . . this process.

The judge credited the unrebutted expert testimony offered by respondents' certified forensic psychologist and clinical neuropsychologist demonstrating there was no evidence Anne lacked capacity at the time she executed the 2013 will. To the contrary, the expert noted Anne completed coursework at New York University and obtained a certification as a nursery assistant, lived independently for parts of her life, divided her assets between her family and organizations she supported, which the judge found "show[ed] that she understood on some level the nuances involved in her estate." The other evidence noted by respondents' expert, which the judge found probative, was Anne understood the value of money, cut coupons, paid for items using an ATM card, used her wallet, and bought gifts for friends. According to the expert, there

6

was no medical proof she lacked capacity, or that her expressive or receptive language abilities were deficient.

The judge concluded:

> Anne understood that she had money. That was attested to by Sarah Jane and by . . . Ruiz, and she took vacations when she wanted, she bought gifts and . . . other items as she pleased. She used an ATM and clearly knew the value of the money she used. She liked to use coupons and get bargains. It seems also clear to [the court] that Anne recollected the property of which she was about to dispose and the particular distribution she was effectuating. There's testimony that she had a strong connection to JESPY, and she left . . . a gift in her will. She was upset with her brother's . . . passing and his death from cancer, and she left a gift to the Cancer Society.
>
> She left money to . . . [Frederick]'s children, as she wanted to make sure that they were cared for. And the testimony, again, pretty much unrefuted, is that even if I [accept] [Frederick]'s argument that he loved her and she loved him, I don't think that's the standard. . . . [T]he unrefuted testimony is that Anne was upset that Fred[erick] and his first wife couldn't make things work out, and she was disappointed with her brother for divorcing his wife and having a relationship with another woman and having another child. And again, the testimony is . . . that she liked, I should say, Fred[erick]'s first wife, Beth, and didn't understand why Fred[erick] left his family.
>
> So, on these facts, I cannot come to a clear conviction without hesitancy that Anne . . . lacked capacity, so summary judgment is granted in favor of

A-4878-17T2

> [respondents], dismissing counts . . . one and three of the complaint with prejudice and without cost.

The motion judge also rejected Frederick's claim of undue influence. He noted Frederick conceded there was no direct evidence of undue influence. Instead, Frederick argued there was a presumption of undue influence based upon a confidential relationship between Anne and her siblings, and alleged there were suspicious circumstances present when Anne executed the 2010 and 2013 wills.

The judge found the evidence clearly established a confidential relationship. Indeed, there was no dispute Sarah Jane assisted Anne with her finances after Anne suffered a stroke, and was named her healthcare proxy in 2010; Abraham was actively involved in making medical decisions for Anne; and Deborah and Abraham were trustees of Anne's trust. The judge also found the record established there were suspicious circumstances present when Anne executed the 2010 and 2013 wills because Sarah Jane first suggested Anne prepare a will and recommended she see an attorney, who was an acquaintance.

However, the judge determined the presumption was overcome

> because there's nothing to indicate [the estate attorney] ever worked for anyone else in the family. He certainly was contacted, suggested, recommended by Sarah Jane, who knew him, but there's . . . nothing to indicate that there's a conflict of professional loyalty. . . . [T]here's

8

no proof that [the attorney] was the attorney for the beneficiaries now, the brothers and sisters who benefitted from the drafting of the will.

Next, it also seems to me that Sarah Jane, while she is an attorney and she's a beneficiary, is not the attorney, she wasn't acting as an attorney for the decedent. She didn't get involved as the attorney for her sister and benefit from the attorney relationship.

He concluded there was no undue influence because the 2013 will reasonably benefitted the natural objects of Anne's bounty. He found the evidence, which included financial instruments dating back to 1997, demonstrated over an extended period of time Anne "saw her close-in family as the natural objects of her bounty[,]" except for Frederick.

The judge found ample reasons why Anne consistently excluded Frederick. He noted the evidence demonstrated there was a long-standing schism in the family, where Frederick was involved in litigation with the family involving Billy's estate. Anne often sided with the family rather than Frederick in these disputes. According to her caretaker, Anne referred to Frederick as the "blacksheep of the family[.]" Thus, substantial evidence offering logical reasons for Frederick's exclusion as a beneficiary of her estate overcame the presumption of undue influence suggested by Sarah Jane's referral to the attorney who drafted Anne's will.

Following entry of summary judgment in respondents' favor, Frederick filed a motion for counsel fees pursuant to Rule 4:42-9(a)(3). The judge made oral findings, which reiterated in detail the findings undergirding summary judgment in respondents' favor. The judge concluded Frederick had no reasonable cause to challenge the will and no right to counsel fees, and denied the request.

Frederick appealed from the aforementioned orders. He sought to supplement the appellate record with evidence he obtained as part of discovery in an action involving his parents' estates. We denied the motion and directed him to file a motion for reconsideration in the trial court. Frederick's motion for reconsideration alleged he obtained new evidence of: the relationship between Sarah Jane and the estate attorney; examples of Sarah Jane's involvement and undue influence on the formation of the estate plan for the siblings' mother, Sima; and testimony related to the denial of Frederick's fee application. The motion judge concluded the information Frederick obtained did not constitute new evidence and was discoverable beforehand. Even if new, the evidence was immaterial and would not impact the decision.

Frederick also argued the court erred by failing to conduct a plenary hearing before entering summary judgment because the judge relied upon

10

opinion testimony and there were witness credibility issues. The motion judge denied reconsideration, first noting our remand was limited to the alleged newly discovered evidence, not whether a plenary hearing should be held to address credibility. Notwithstanding, the judge concluded Frederick

> has not done more than raise a "metaphysical doubt" as to credibility. Sarah Jane [and the estate attorneys] have all been deposed and provide consistent testimony as to the nature and extent of their relationships. While it is not impossible for a finder of fact to conclude that there may have been some nefarious behind-the-scenes machinations among the three to cut [Frederick] out of Anne's will without Anne's knowledge or consent, the record simply does not support such a finding. The connections are unsubstantiated and have been denied, and [Frederick] has only raised circumstantial doubts which fall short of the requirement that [Frederick] "'come forward with evidence' that creates a genuine issue of material fact" as to credibility.
>
> [(alteration in original) (citations omitted)].

On appeal Frederick argues the following points:

> I.   THE COURT COMMITTED CLEAR ERROR BY DECIDING THIS CONTESTED MATTER ON THE PAPERS.
>
> II.   ANNE DID NOT KNOW THE EXTENT OF HER ASSETS AND THERE IS NO ACKNOWLEDGMENT BY ANYONE THAT SHE UNDERSTOOD THE DOCUMENT THAT SHE EXECUTED.

III.  THE GRANT OF SUMMARY JUDGMENT IN FAVOR OF RESPONDENTS ON THE ISSUE OF UNDUE INFLUENCE WAS CLEAR ERROR AS THERE REMAINED SIGNIFICANT CREDIBILITY ISSUES AND MATERIAL ISSUES OF FACT IN DISPUTE.

IV.  THE FAILURE TO GRANT [FREDERICK] ACCESS TO RESPONDENTS' EMAILS CAUSED UNDUE PREJUDICE.

V.  APPELLANT HAD REASONABLE CAUSE TO INQUIRE INTO THE PROPRIETY OF THE COMPLICATED WILLS EXECUTED BY ANNE AND THE DENIAL OF THE FEE APPLICATION WAS AN ABUSE OF DISCRETION.

Frederick's supplemental brief argues:

I.  THE COURT SHOULD HAVE CONDUCTED AN EVIDENTIARY HEARING BEFORE GRANTING SUMMARY JUDGMENT.

A.  There Is Insufficient Evidence To Establish That Anne Assented To The Terms Of The 2013 Will Or The 2010 Will.

B.  Bias And Motivation Are Important Factors To Consider When Analyzing Sarah Jane's Testimony Concerning Her Actual Involvement In The Process Of Creating The Wills.

C.  A Trial Is Necessary To Properly Determine Witness Credibility.

D.  Opinion Testimony Is Not Dispositive Of Any Factual Disputes.

12

II.   THE COURT DECIDED THE MATTER ON THE PAPERS DESPITE THE OBVIOUS CREDIBILITY ISSUES, MOTIVATION AND BIAS WHICH SURROUNDED THE PROCUREMENT OF THE WILLS BY SARAH JANE.

A.   Sarah Jane[]'s Relationship With The Scrivener Is More Significant Than She Revealed At Her Deposition.

B.   This Is Not The First Time That Sarah Jane Was Accused Of Coercing A Family Member Concerning Karnak.

C.   Despite Being A Beneficiary Of Sima Jelin's Estate, Anne Was Provided With No Information Of Distributions From [Respondents] As Fiduciaries.

III.   RESPONDENTS AND THE COURT PROCEEDED ON A FAULTY PREMISE AS TO THE BURDEN OF PROOF NECESSARY TO OVERCOME THE PRESUMPTION OF UNDUE INFLUENCE.

IV.   ANNE DID NOT KNOW THE EXTENT OF HER ASSETS AND THERE IS NO ACKNOWLEDGMENT THAT SHE UNDERSTOOD THE DOCUMENT SHE EXECUTED.

V.   [FREDERICK] SHOULD HAVE BEEN GRANTED REASONABLE FEES BASED ON ANNE'S CAPACITY ISSUES, RESPONDENTS' MOTIVATION TO EXCLUDE [FREDERICK] FROM KARNAK AND SARAH JANE'S INVOLVEMENT IN THE PROCESS.

I.

We review an order granting summary judgment de novo. Graziano v. Grant, 326 N.J. Super. 328, 338 (App. Div. 1999). On appeal of a grant or denial of summary judgment, we apply the same standard as the trial court. R. 4:46-2. We look at all of the evidence submitted in the "light most favorable to the non-moving party," and determine if the moving party is entitled to summary judgment as a matter of law. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). The court may not weigh the evidence and determine the truth of the matter. Ibid. The court's role is to determine whether there is a genuine issue for trial. Ibid. A party moving for summary judgment must show there is no genuine issue as to any material fact challenged and that he or she is entitled to a judgment or order as a matter of law. R. 4:46-2(c). However, there are cases where the evidence "is so one-sided that one party must prevail as a matter of law." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

When both parties move for summary judgment, the court may assume the matter is ripe for adjudication. Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 450 (2007). In deciding cross-motions for summary judgment, however, a judge may not accept one of two conflicting versions of

14

material facts and render a decision on that basis. O'Keeffe v. Snyder, 83 N.J. 478, 487 (1980). Summary judgment is granted on cross-motions because "one of the moving parties is entitled to judgment as a matter of law." Ibid. (citation omitted).

When both sides seek summary judgment, and the trial court grants judgment to one party, on appeal we view the evidence in the light most favorable to the party who lost. Liberty Surplus Ins. Corp., 189 N.J. at 445. Our inquiry remains essentially the same: whether that evidence presents a genuine issue of material fact that must be submitted to a fact-finder or whether it is so one-sided one party is entitled to judgment as a matter of law. Id. at 445-46.

"Motions for reconsideration are granted only under very narrow circumstances[.]" Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002). We review a trial court's denial of reconsideration for abuse of discretion. Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996).

We considered Frederick's arguments relating to the granting of summary judgment on the issues of testamentary capacity and undue influence, and in light of the record before us, we affirm for the reasons expressed by the motion judge. We reached the same result on our de novo review of the record. The factual arguments raised by Frederick do not create a material factual dispute as

to either Anne's capacity or Sarah Jane's alleged undue influence. The new evidence did not create a material dispute in fact thwarting summary judgment in respondents' favor.

II.

A trial court's fee determinations are accorded substantial deference, and are disturbed only on the rarest of occasions—because of a clear abuse of discretion. Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001); Rendine v. Pantzer, 141 N.J. 292, 317 (1995); Yueh v. Yueh, 329 N.J. Super. 447, 466 (App. Div. 2000); In re Estate of Bloomer, 43 N.J. Super. 414, 416 (App. Div. 1957). An abuse of discretion in the award of counsel fees may be demonstrated "if the discretionary act was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005) (citing Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Whether an allowance is permissible under the court rules, however, is a question of law subject to de novo review. See Balsamides v. Protameen Chems., 160 N.J. 352, 372 (1999) ("[M]atters of law are subject to de novo review."); Manalapan Realty, LP v. Twp. Comm., 140 N.J. 366, 378 (1995) ("A

16

trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." (citations omitted)).

We are unpersuaded the motion judge abused his discretion or erred as a matter of law. The judge made detailed findings explaining why Frederick had no reasonable cause to challenge the will and was not entitled to an award of fees. We affirm for the reasons expressed by the motion judge.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION