**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0858-18T2

JSTAR, LLC,

      Plaintiff-Appellant,

v.

BRICK TOWNSHIP ZONING
BOARD OF ADJUSTMENT,
and RTS IV, LLC, a/k/a JOSEPH
R. PRESTIFILIPPO, JR.,

      Defendants-Respondents.

_____

Submitted March 23, 2020 – Decided June 4, 2020

Before Judges Rothstadt, Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0389-18.

R.C. Shea & Associates, PC, attorneys for appellant (Robert C. Shea, of counsel and on the briefs; Dina M. Vicari and Robert C. Shea II, on the briefs).

Weiner Law Group LLP, attorneys for respondent Brick Township Zoning Board of Adjustment (Ronald D. Cucchiaro, of counsel and on the brief; Richard Brigliadoro, on the brief).

King Kitrick Jackson McWeeney & Wells, LLC, attorneys for respondent RTS IV, LLC (John J. Jackson, III, of counsel and on the brief; Jilian L. McLeer, on the brief).

PER CURIAM

Defendant RTS IV, LLC (RTS) sought preliminary and final major subdivision approval, design waivers and variance relief from defendant Brick Township Zoning Board of Adjustment (Board) (collectively defendants) to permit construction of single-family homes and ancillary improvements. The owner of an adjacent property, plaintiff JSTAR, LLC, objected and, prior to the completion of Board action on the application, filed a complaint in lieu of prerogative writs alleging the Board's violations of the Open Public Meetings Act (OPMA), N.J.S.A. 10:4-1 to -21, rendered any Board action in 2018 void.[1] Plaintiff appeals from the trial court's orders granting defendants' motions for summary judgment, dismissing plaintiff's complaint with prejudice, and denying plaintiff's cross-motion for summary judgment and, similarly, dismissing its complaint with prejudice.

---

[1] Although the complaint also alleged the Board violated the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -163, plaintiff's appellate argument is limited to the alleged OPMA violations.

A-0858-18T2

Plaintiff's present arguments center on the Board's failure to publish adequate notice of its January 3, 2018 reorganization meeting and its January 17, 2018 regular meeting. In its merits brief, plaintiff contends:

POINT ONE

THERE IS NO QUESTION OF MATERIAL FACT THAT OPMA HAS BEEN VIOLATED, THEREFORE, [PLAINTIFF'S] COMPLAINT SHOULD NOT HAVE BEEN DISMISSED AND THE RELIEFS OUTLINED IN [PLAINTIFF'S] COMPLAINT SHOULD HAVE BEEN GRANTED BY THE TRIAL COURT.

A. [PLAINTIFF'S] COMPLAINT RELIEF REQUESTING THAT ALL BOARD DETERMINATIONS AND ACTIONS TAKEN AT THE REORGANIZATION, JANUARY 17TH REGULAR MEETING AND THE JANUARY 31ST SPECIAL MEETING, BE VOIDED DUE TO OPMA VIOLATIONS, SHOULD HAVE BEEN GRANTED BY THE TRIAL COURT.

B. [PLAINTIFF'S] COMPLAINT RELIEF REQUESTING TO VOID THE BOARD'S DETERMINATION TO SCHEDULE THE JANUARY 31ST SPECIAL MEETING TO HEAR . . . RTS['S] APPLICATION SHOULD HAVE BEEN GRANTED BY THE TRIAL COURT.

C. [PLAINTIFF'S] COMPLAINT RELIEF REQUESTING REVERSAL OF THE BOARD'S ACTION TO ACCEPT THE BOARD

3

ATTORNEY'S DETERMINATION THAT THE STRICT INTENT OF THE OPMA WAS MERELY "SUBSTANTIALLY COMPLIED", WHEREIN . . . RTS['S] APPLICATION SHOULD HAVE BEEN STOPPED AND REQUIRED TO RE-START, SHOULD HAVE BEEN GRANTED BY THE TRIAL COURT.

D. [PLAINTIFF'S] COMPLAINT RELIEF REQUESTING THE BOARD TO TAKE REMEDIAL AND CURATIVE MEASURES TO COMPLY WITH THE PROCEDURAL REQUIREMENTS OF THE OPMA, FOR THE REORGANIZATION, JANUARY 17TH REGULAR AND JANUARY 21ST SPECIAL MEETINGS, SHOULD HAVE BEEN GRANTED BY THE TRIAL COURT.

E. [PLAINTIFF'S] COMPLAINT REQUESTING THAT THE BOARD BE PROHIBITED FROM CONDUCTING ANY FUR[TH]ER MEETINGS FOR . . . RTS['S] APPLICATION INCLUDING BUT NOT LIMITED TO FEBRUARY 20, 2018, SHOULD HAVE BEEN GRANTED BY THE TRIAL COURT.

F. [PLAINTIFF'S] COMPLAINT RELIEF REQUESTING THAT ALL TESTIMONY AND EXHIBITS PRESENTED BEFORE THE BOARD AND DETERMINATIONS MADE BY THE BOARD ON . . . RTS['S] APPLICATION ARE DEEMED NULL AND VOID AND RTS MUST RE-START ITS APPLICATION BEFORE THE BOARD, SHOULD HAVE BEEN GRANTED BY THE TRIAL COURT.

POINT TWO

THE TRIAL COURT IGNORED THE UNDISPUTED FACTS AND IMPROPERLY CONCLUDED THAT THE BOARD PROPERLY COMPLETED THE PROCESS OF RATIFICATION TO RECTIFY THE OPMA VIOLATIONS.

POINT THREE

THE TRIAL COURT'S DECISION IMPROPERLY STATED THE FACTS OF THE CASE, REFUSED TO FOLLOW APPLICABLE LEGAL STANDARDS AND LONGSTANDING CASE LAW AND ADDRESS ALL LEGAL ISSUES RAISED BY [PLAINTIFF].

POINT FOUR

THE STANDARD OF REVIEW OF SUMMARY JUDGMENT MOTIONS PERMITS THIS APPELLATE COURT TO REVERSE THE DETERMINATIONS OF THE TRIAL COURT.

We agree the Board's multiple failures to comply with the OPMA require reversal of the trial court's orders and remand to the Board for proceedings consistent with this decision.

The Board conducted its reorganization meeting on January 3, 2018, at which it adopted a revised 2018 annual meeting schedule and appointed the Board chairman, vice chairman, secretary, attorney, engineer, court reporter and conflict planner. RTS's application was not considered at the meeting.

5

At the January 17, 2018 regular meeting, the Board chairman announced RTS's application would not be heard because the meeting was not properly noticed, and would be carried to a special meeting on January 31, 2018.[2]

At the January 31 meeting, plaintiff's counsel challenged the Board's jurisdiction. Specifically, he noted the earlier January meetings were not included in the 2017 annual meeting schedule that was published only in the Asbury Park Press (The Press). He also observed that notice of those early-January meetings appeared only in the annual meeting schedule published in a January 18, 2018 edition of The Press—after the meetings were held. Though counsel conceded proper notice was provided for the January 31 meeting, he argued to the Board that its failure to comply with the OPMA provisions regarding newspaper notice of the two earlier meetings in January rendered any actions at those meetings as well as the January 31 meeting voidable.

The Board's counsel agreed that the annual meeting schedule that included the early-January meetings was published on January 18, only in The Press. However, because notices of both those meetings were posted on the bulletin board at the Board's meeting place and on the internet, and was sent by email to

---

[2] Plaintiff failed to provide a transcript of the January 17, 2018 meeting.

The Press on January 12, he opined the Board "did meet the requirement for adequate notice [under the OPMA], except for [the requirement that notice be mailed to] the two newspapers." He commented those steps constituted "substantial compliance" with the OPMA, and invalidation of the Board's actions was not warranted.

Plaintiff filed its complaint in the instant matter on February 16, 2018. The Board published notice of a February 21, 2018 special meeting[3] in The Press and The Ocean Star; the notice stated the Board was going to readopt its 2018 meeting dates. A transcript of that meeting was not provided in the appeal record. In its merits brief, however, plaintiff admits the Board readopted its 2018 annual meeting schedule; the record reflects the schedule was published on February 27, 2018,[4] only in The Press. The Board, in its merits brief, avers RTS's application was not heard at that meeting.

The record contains only partial transcripts of the Board's August 15, 2018 and September 5, 2018 regular meetings. The August 15 transcript reflects the ostensible readoption of the Board's "appointment of officers and professionals

---

[3] We note a February 21, 2018 regular meeting appears in the annual meeting schedule published on January 18, 2018.

[4] The merits brief mistakenly lists the date as February 27, 2017.

to 2018[.]" The September 5 transcript reflects the Board's approval of "resolutions to reappoint [its] attorney and . . . professionals," including the reappointment of the Board's engineer, planner, court reporter, and the reappointment of the Board chairman, vice chairman and secretary. The record reflects notice of both the August 15 and September 5 meetings were published in only one newspaper.

We review the trial court's summary judgment decision de novo, applying the same legal standard as the trial court. Wakefern Food Corp. v. Liberty Mut. Fire Ins. Co., 406 N.J. Super. 524, 538 (App. Div. 2009). Thus, we consider "whether the evidence presents a sufficient disagreement to require submission to a jury [or trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." Liberty Surplus Ins. Corp. v. Nowell Amoroso P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995)). If there is no genuine issue of material fact, we decide "whether the trial court correctly interpreted the law." Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Notwithstanding the trial court's finding that the Board rectified its failure to include the January 3 and January 17, 2018 regular meetings in the annual meeting schedule by publishing same "later on in the month" in both The Press and The Ocean Star, the appellate record reveals that the annual meeting schedule published on January 18, 2018, was published only in The Press. Even when the schedule was readopted in February 2018, it was again published only in The Press. N.J.S.A. 10:4-18 requires that a public body, such as the Board, mail the annual meeting notice to at least two newspapers designated by the public body pursuant to N.J.S.A. 10:4-8(d)(2).[5] We see no proof that the annual meeting notice was mailed to The Ocean Star. Thus, there was no advance notice of the January 3 and January 17, 2018 meetings.

Absent notice under N.J.S.A. 10:4-18, a public body must give "adequate notice" of a meeting in compliance with N.J.S.A. 10:4-8(d), which provides in pertinent part: "'Adequate notice' means written advance notice of at least

---

[5] The statute also requires the public body to "post and maintain posted" the annual meeting notice throughout the year in a public place reserved for such or similar announcements, N.J.S.A. 10:4-18 and N.J.S.A. 10:4-8(d)(1), and submit it to the municipal clerk, county clerk and the New Jersey Secretary of State as dictated by N.J.S.A. 10:4-8(d)(3). The mandated posting, mailing and submission must be done "at least once each year, within [seven] days following the annual organization or reorganization meeting" or by January 10 if no such a meeting is held. N.J.S.A. 10:4-18.

[forty-eight] hours, giving the time, date, location and, to the extent known, the agenda of any regular, special or rescheduled meeting, which notice shall accurately state whether formal action may or may not be taken[.]" Notice must be posted in the same manner as required for the annual meeting schedule. N.J.S.A. 10:4-8(d)(1). It must also be "mailed, telephoned, telegrammed, or hand delivered to at least two newspapers" designated in the same manner as those to which an annual meeting notice is to be mailed. N.J.S.A. 10:4-8(d)(2). And, it must be submitted in the same manner as the annual meeting notice with the clerks and Secretary of State. N.J.S.A. 10:4-8(d)(3).

The procedures required by the OPMA are meant to advance the Legislature's declared purpose to ensure

> the right of the public to be present at all meetings of public bodies, and to witness in full detail all phases of the deliberation, policy formulation, and decision making of public bodies, is vital to the enhancement and proper functioning of the democratic process; [to prevent] that secrecy in public affairs [that] undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society, and . . . to insure the right of its citizens to have adequate advance notice of and the right to attend all meetings of public bodies at which any business affecting the public is discussed or acted upon in any way[.]

[N.J.S.A. 10:4-7; see Times of Trenton Publ'g Corp. v. Lafayette Yard Cmty. Dev. Corp., 183 N.J. 519, 529 (2005).]

It is undisputed that the Board failed to provide prior notice of its January 3 and January 17, 2018 meetings, and that, inexplicably, notice of all its regular meetings on the annual meeting schedule was mailed only to The Press, not to the second required newspaper. Both the Board's failure to comply with the OPMA's requirements regarding its early January meetings and its flawed attempt to remedy its initial failures cannot be countenanced. As plaintiff clearly explained to the Board at the January 31 meeting, notice of meetings must be mailed to two newspapers. The law mandates the Board's actions be declared void.

The Board's actions at any non-conforming meeting are voidable by a trial court presiding at a prerogative writs hearing. N.J.S.A. 10:4-15(a). A board, however, "may take corrective or remedial action by acting de novo at a public meeting held in conformity with [the OPMA] . . . regarding any action which may otherwise be voidable[.]" Ibid. Before her elevation to our Supreme Court, then Judge Long, recognized:

> Willful violations of the Act require swift and strong remediation. However, invalidation of public action is an extreme remedy which should be reserved for violations of the basic purposes underlying the Act.

11

Polillo v. Deane, 74 N.J. 562 (1977), expressly permits discretion in the fashioning of remedies for technical violations of the Act which do not result from bad faith motives and which do not undermine the fundamental purposes of the [OPMA].

[Liebeskind v. Mayor and Mun. Council of Bayonne, 265 N.J. Super. 389, 394-95 (App. Div. 1993) (citation omitted).]

In Polillo, much like this case, the public body's meetings, "[a]lthough . . . publicized in some form by local newspapers," were either not noticed or improperly noticed. 74 N.J. at 567. The public body conceded "the vast majority of their meetings technically violated the" OPMA. Id. at 577. The Court decried the public body's attempt to rectify its OPMA failures by taking formal votes at two meetings which complied with OPMA because such practice would undermine the OPMA's purpose, allowing

an agency to close its doors when conducting negotiations or hammering out policies, and then to put on an appearance of open government by allowing the public to witness the proceedings at which its action is formally adopted. Such an interpretation of the statute would conflict with N.J.S.A. 10:4-15(a) which provides that "a public body may take corrective or remedial action by acting de novo at a public meeting held in conformity with this act."

[Id. at 578 (emphasis omitted).]

12

The Court, however, did "not find it necessary, in fashioning a remedial solution, to invalidate and repudiate all other public meetings, particularly those hearings at which testimony and evidence were received." Id. at 580. The Court found the remedial provisions of N.J.S.A. 10:4-15(a) and the court's authority to "issue such orders and provide such remedies as shall be necessary to insure compliance with the provisions of the" OPMA, N.J.S.A. 10:4-16,

> contemplate maximum flexibility in rectifying governmental action which falls short of the standards of openness prescribed for the conduct of official business. Consistent with the breadth and elasticity of relief provided in the legislative scheme, it is entirely proper to consider the nature, quality and effect of the noncompliance of the particular offending governmental body in fashioning the corrective measures which must be taken to conform with the statute. Thus, in this context, the "substantial compliance" argument of defendants carries some weight on the question of remedy and relief.
>
> [Id. at 579.]

Thus, contrary to the opinion the Board's attorney expressed at the January 31, 2108 meeting, substantial compliance with the OPMA does not, itself, justify deviations from the notice requirements. It is, as the trial court recognized, but one of the factors comprising the prism through which we view the Board's actions.

A-0858-18T2

We first note the trial court's cogent finding that "plaintiff is not pursuing claims against other defendants" whose matters were heard at the contested hearings; only RTS's matter is in issue. We are also convinced the Board's violations were technical ones, related to the newspaper-notice requirement of the OPMA; it complied with the posting and submission requirements of N.J.S.A. 10:4-8(d)(1) and N.J.S.A. 10:4-8(d)(3). As the trial court observed, "plaintiff has been able to participate, enter its objections and otherwise have its interest protected in connection with the matter in which the Board conducted itself," and has not been excluded from participation in any Board meeting at which the RTS application was considered. The record before us does not contain evidence that the substantive issues of RTS's application were acted upon; we see only that the procedural issues here considered were raised at the January 31, 2018 meeting. The trial court stated RTS's "application is still pending before the Board and has not been resolved[.]" Plaintiff has not submitted any argument other than the procedural ones.

The Board's remedial actions appear to have been good-faith attempts to rectify the mistakes made at the early January meetings. Its readoption of the meeting schedule and the appointments were de novo actions. Unfortunately, although notice of the February meeting at which the annual meeting schedule

was readopted was proper, the Board never mailed the schedule to two newspapers. The schedule was twice published in The Press, but it was never sent to The Ocean Star. Hence, any regular meeting on that schedule was never properly noticed. The remedial action of readopting the Board's appointments that took place at the August and September meetings, therefore, did not take place "at a public meeting held in conformity with [the OPMA]," as required by N.J.S.A. 10:4-15(a). The Board's corrective actions did not satisfy the OPMA's purposes or cure the notice-defect.

We fully comprehend not every violation of the OPMA requires reversal of the body's actions at an inadequately noticed meeting. Polillo, 74 N.J. at 579. But we cannot approve the Board's initial failure to comply with the OPMA with regard to its early- January meetings, and its subsequent compliance failures in attempting to remediate those failures.

Contrary to plaintiff's argument that RTS's application must be heard anew, we need not repudiate all of the Board's actions. The Polillo Court allowed the public body to "utilize so much of the testimony and evidence which it acquired in the course of its original effort as it deem[ed] necessary and appropriate." Id. at 580. As in Polillo,

> any decision in that regard must be arrived at in a manner in strict conformity with the [OPMA] so that

A-0858-18T2

the public may be fully apprised by adequate notice and a publicized agenda exactly what prior meetings and what aspects of the existing [Board] record are sought to be so utilized.

[Ibid.]

Again, the record does not reflect that the Board heard testimony relating to RTS's application, but if there were proceedings undisclosed to us, we do not foreclose the Board from considering those proceedings if it adheres to the precepts set forth herein.

We "weigh[] the nature, quality and effect of the noncompliance in this case against the potential disruption of the orderly process of government, as well as the rights" of those in attendance at the procedurally-defective meetings. Aronowitz v. Planning Bd. of Twp. of Lakewood, 257 N.J. Super. 347, 359-60 (Law Div. 1992). In view of plaintiff's presence at all meetings at which RTS's application was considered, and in that the Board has not reached a final decision on that application, we follow the Polillo Court's guidance and direct the trial court to remand this matter to the Board to first conduct further proceedings on RTS's application at a properly noticed meeting after it remedies its prior notice failures by conducting de novo proceedings—again, at a properly noticed meeting—at which it shall readopt its appointments. In our judgment, the annual meeting notice was readopted de novo at the properly noticed February meeting.

As such, the Board need only timely mail the annual meeting schedule to two newspapers in advance of the meetings set forth therein; thereafter, any meeting set forth in the schedule would comply with the requirements of N.J.S.A. 10:4-18. Of course, any meeting may alternatively be noticed under N.J.S.A. 10:4-8(d).

Such a course will ensure the Board does not skirt the legislative requirements of the OPMA, and that the Board's previous actions are not entirely scotched.

We determine any remaining argument not here considered to be without sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E). We briefly comment that the Board, in addressing the last proviso clause of N.J.S.A. 10:4-15(a),[6] reviewed some decisional law but did not advance how the clause applies to these circumstances. As such, we will not consider plaintiff's undeveloped argument. Chase Bank USA, N.A. v. Staffenberg, 419 N.J. Super. 386, 413 n.17 (App. Div. 2011).

---

[6] In pertinent part, the statute provides: "[A]ny action for which advance published notice of at least [forty-eight] hours is provided as required by law shall not be voidable solely for failure to conform with any notice required in this act." N.J.S.A. 10:4-15(a).

The trial court's orders granting defendants' motions for summary judgment and dismissing plaintiff's complaint with prejudice, and denying plaintiff's cross-motion for summary judgment are reversed, and this matter is remanded to the trial court for an entry of an order remanding the matter to the Board for proceedings consistent with this decision. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION