722 A.2d 603 (1999)
317 N.J. Super. 505
Larry KOLCZYCKI, Thomas Matarese and Bachelor I Tavern, Inc., t/a Scandals, Plaintiffs-Respondents,
v.
CITY OF EAST ORANGE, the Office of the Mayor for the City of East Orange, the East Orange City Council, the East Orange Police DepartmentBureau of Internal Affairs, the East Orange Fire Department, the East Orange Bureau of Fire Prevention, the East Orange Department of Property Maintenance and Re-Vitalization, jointly and severally, Lieutenant John Jackson, Individually and as Employee of the East Orange Police Department, Defendants-Appellants,
and
Harry E. Harman, as Chief of Police for the City of East Orange, and Ronald Salahuddin, individually and as Director of Property Maintenance for the City of East Orange, John Does 1-10, Fictitious Individuals the identities of Whom are Yet Unknown, Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted January 6, 1999.
Decided February 2, 1999.
*604 Brown & Childress, East Orange, for defendants-appellants (Alan L. Jackson, on the brief).
Nowell Amoroso, Hackensack, for plaintiffs-respondents (Christopher W. McGarry, on the brief).
Before Judges STERN, LANDAU and BRAITHWAITE.
The opinion of the court was delivered by LANDAU, J.A.D.
Defendants appeal from an order striking their answer and separate defenses for failure to provide discovery and from the entry of judgment in favor of plaintiffs following a proof hearing. There is a cross-appeal from denial of counsel fees. For reasons discussed below, we reverse and remand.
After timely filing of a tort claim notice on July 14, 1992, plaintiffs filed a Law Division action against the City of East Orange, its police and fire departments, and certain of its employees on May 23, 1994, alleging, inter alia, that defendants tortiously interfered with plaintiffs' prospective economic advantage by engaging in a course of conduct designed to cause plaintiffs to close down their night club. Defendants persistently failed to provide complete and timely discovery. In an effort to expedite the disposition of the matter, the trial court entered a case management order in October 1996 directing defendants to provide outstanding discovery within a specified period of time, and providing for the suppression of defendants' answer and defenses, "without prejudice", as the sanction for violation of the order. Defendants failed to provide timely discovery and the court accordingly suppressed defendants' answer. The court subsequently conducted a proof hearing and entered judgment awarding plaintiffs $400,000 in damages.
These are the facts presented by plaintiffs. Plaintiffs owned and operated "Charlie's West", an East Orange night club catering to homosexuals. When "Charlie's West"'s patronage declined, due in part to the opening of gay clubs in other areas, plaintiffs changed the name of the Club to "Scandals" in 1991 and altered its operation so as to attract a heterosexual clientele, primarily young black patrons. By January 1992, the transformation had become successful and Scandals was attracting large numbers of patrons on each night of operation. Plaintiffs testified that as this occurred, East Orange police officers, *605 fire officials, and building inspectors began to take actions designed to cause the club to fail. Specifically, plaintiffs claimed that Scandals had become a strong competitor posing a financial threat to "Bogie's", a nearby night club in which co-defendant Ronald Salahuddin[1] had an ownership interest.
Plaintiffs described a pattern of harassment and intimidation of their club's patrons by the police, and unannounced inspections of the "Scandals" premises by employees of the East Orange Fire Department, the Fire Prevention Bureau, and the Department of Property Maintenance over a period of several months.
Kevin Skinner, a former manager of Scandals, testified that defendant Lt. John Jackson of the East Orange Police Department forced him to hire four East Orange police officers as security personnel, including Lt. Jackson himself, at $125 per night, by threatening to have the club closed down if the police officers were not hired. Plaintiff Thomas Matarese and Abigail Adams, a former promoter at Scandals, both testified that prior to the conversion of the club, fire department employees and building inspectors only came to conduct inspections during the day, but upon the change, they began to show up at night during peak business hours to conduct random inspections and to threaten plaintiffs with immediate closure of the club. The police often entered the club without being summoned and without responding to inquiries as to their reason for being there. Sometimes the police would block access to the club's parking lot. Plaintiff Matarese testified that once, in April 1992, defendant Lt. Jackson entered the club with other police officers in riot gear and pushed the patrons out into the parking lot.
Plaintiffs testified that by April 1992, the patronage of the club and the income stream had dwindled due to the constant presence of the police and their harassment of patrons. On April 15, 1992, plaintiffs filed a complaint with the Internal Affairs Unit of the East Orange Police Department against Lt. Jackson alleging harassment and extortion. Even though plaintiffs had meetings with high level officials of the City of East Orange to get help in resolving their problems with the police and fire departments, there was no change in the behavior of those entities. As earlier noted, a N.J.S.A. 59:8-8 notice was filed on July 14, and Scandals closed at the end of September 1992[2]. The premises were boarded up in October.
Based upon the proofs submitted, the trial judge found no corroboration in the record as to the involvement or complicity of co-defendant Salahuddin in the acts of harassment perpetrated against plaintiffs. Accordingly, no cause of action was adjudicated against Salahuddin. The judge also found no cause of action against the Chief of Police, Harry Harman. These rulings were not the subject of any cross appeal.
The court entered judgment, however, against the City of East Orange and Lt. Jackson in the amount of $400,000 based on plaintiffs' proof of damages as testified to by plaintiffs' expert witness. No counsel fees were allowed.
On appeal, defendants contend that the trial court abused its discretion in striking defendants' answer and defenses. They also urge that plaintiffs' complaint should have been dismissed as time-barred following the proof hearing, pursuant to N.J.S.A. 59:8-8b which requires that suit be filed within two years since accrual of the claim. In their cross-appeal, plaintiffs contend that the trial court abused its discretion in refusing to award counsel fees to plaintiffs on the ground that such an award would constitute a windfall to plaintiffs.
We disagree with defendants' contention that the trial court abused its discretion in suppressing defendants' answer and defenses. However, that does not end the inquiry because the two orders dealing with suppression were each entered "without prejudice."
*606 R. 4:23-2(b) authorizes the imposition of sanctions upon a litigant for failure to comply with a court order to provide discovery. It provides in pertinent part:
If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

...
(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

[R. 4:23-2(b)(3).]
The standard of review of a trial court's exercise of discretion pursuant to R. 4:23-2(b) is "whether the court abused its discretion, a standard that cautions appellate courts not to interfere unless it appears that an injustice has been done." Abtrax Pharmaceuticals, Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 517, 655 A.2d 1368 (1995).
The record here confirms that the trial court appropriately exercised its discretion under R. 4:23-2(b)(3) in ordering suppression of defendants' answer and defenses, because of defendants' persistent dereliction in providing discovery, even after entry of the October 1996 case management order.
Plaintiffs filed a notice of tort claim with the City of East Orange on July 14, 1992,[3] and the complaint was filed on May 23, 1994 and served on defendants on or about June 20, 1994.
On or about October 14, 1994, default was entered on motion by plaintiffs against defendants for failure to file an answer to the complaint. Defendants filed a motion to vacate the default, which was granted by order entered on January 26, 1995. On February 24, 1995, defendants filed answers and separate defenses to the complaint. These answers were served on plaintiffs on March 17, 1995.
The matter was originally scheduled for trial on May 20, 1996, but the trial date was adjourned to September 9, 1996 to enable defendants to provide discovery. On July 12, 1996, an order was entered by the trial court directing defendants to provide answers to interrogatories and responses to notices to produce documents.[4]
On August 13, 1996, the court entered the first order suppressing defendants' answer and separate defenses for failure to provide discovery as ordered by the court.
At the trial call on September 9, 1996, defendants' counsel requested that the order suppressing defendants' answer and defenses be vacated and also requested an adjournment of the trial date to enable defendants to provide discovery. On September 27, 1996, the trial court entered an order vacating its suppression order of August 13, 1996.
In an effort to enforce discovery requests and expedite the disposition of the matter, on October 7, 1996, the motion judge then entered a case management order directing defendants to provide, within fourteen days, answers to interrogatories and notices to produce previously propounded on defendants. The order also imposed a schedule for the taking of depositions, and set a trial date for March 3, 1997. The order provided that in the event of failure by defendants to comply with its terms, plaintiffs shall be permitted to submit an order to the court suppressing defendants' answer and defenses "without prejudice".
Defendants again failed to comply with the court's order. On February 21, 1997, plaintiffs' motion to suppress defendants' answer and separate defenses was indeed granted, but "without prejudice". At the hearing on the suppression motion, counsel conceded that defendants had failed to *607 produce the discovery items that plaintiffs claimed to be outstanding, including the liquor license file pertaining to plaintiffs' night club and that of a competing club, the complete internal affairs file regarding the Internal Affairs Bureau's investigation of this matter, the personnel files of Lt. John Jackson, Ronald Salahuddin, and Chief of Police Harry Harman, and certain police reports and internal memos. Some depositions also remained outstanding. The court noted that defendants had never filed any motions for protective orders or to limit the scope of plaintiffs' discovery in this case.
In rendering his decision on the suppression motion in favor of plaintiffs, the trial judge said:
The spirit of the case management order, in my judgment, are [sic] very clear. It is a very specific oriented order designed to complete outstanding discovery in this matter expeditiously under the specific direction of the court in the manner specified in that order, and the court's interpretation of Judge Ferentz's order is more or less supported by the ... procedural history of the case with respect to outstanding discovery and the failure of the defendants to provide discovery in the past, on which occasion this court was required to sanction defendants by suppression of answers and defenses. .... The court must exercise its discretion equitably and under all the circumstances and in light of all the circumstances ... fully set forth, both in the moving papers, the non-moving papers and the arguments made here, the court finds the spirit and the literal terms of Judge Ferentz's order have not been complied with by the City of East Orange within the intendment of that order, that in light of the failure of East Orange to comply and in light of the procedural background of the case the court, in the exercise of its discretion, most reluctantly and most grudgingly is inclined to grant the motion to suppress and strike the answers of the defense as a consequence of a violation of the court's case management order entered on October 7 and the court will schedule a proof hearing to accommodate the plaintiff's ability to prove its case.
In Douglas v. Harris, 35 N.J. 270, 173 A.2d 1 (1961), the Court held that where a party's answer is stricken for failure to provide discovery, the matter proceeds as if default had been entered pursuant to R.R. 4:56-1 (now R. 4:43-1), and thus the trial court has the discretionary power to require proof of liability. Id. at 276-77, 173 A.2d 1. Where the trial court, undertakes to exercise such discretion, the court should ordinarily apply the prima facie standard to plaintiff's proofs, thus not weighing evidence or finding facts but only determining bare sufficiency. Heimbach v. Mueller, 229 N.J.Super. 17, 20-24, 550 A.2d 993 (App.Div.1988). See Pressler, Current N.J. Court Rules, Comment R. 4:23-2.
The trial court here conducted a proof hearing. In rendering his decision on defendants' liability following the proof hearing, the trial judge said:
The allegations in the first count of the complaint alleges tortious interference with prospective advantage and, in that respect, the court finds that there has been sufficient proofs. Again, the court, not having the role to judge the credibility of those proofs or to determine its overall weight, but rather to determine its fair sufficiency, the court has concluded that there has been proofs provided to sustain such a cause of action in this proceeding, and ... the court relies on the following in support of that conclusion, that being testimony of Mr. Skinner, Mr. Matarese, Ms. Abigail Adams, Mr. Kolczycki with respect to certain actions taken by representatives of the City of East Orange at or about the time of the conversion of Charlie West/Scandals, at the time of the conversion of essentially a gay club to a straight young black club. There has been testimony by all of those parties to a pattern of constant and calculated harassment executed by means of unannounced inspections and introductions into the club unannounced over a period of several months. It is, in the court's judgment, reasonable there is a reasonable basis by which a jury could have found it conceivable that the that the harassment, unannounced inspections and other actions taken by representatives *608 of the City of East Orange were a substantial cause of the factor to cause an economic decline in the business being operated at that time, i.e., a business catering to a straight young black clientele, and that East Orange, with full knowledge thereof, in acting through its agents and representatives acting within the scope of their responsibilities as police officers, fire officials and building inspectors did singly and/or collectively interfere with the reasonable expectation of the plaintiffs, being the reasonable expectations of Mr. Matarese and Mr. Kolczycki that their business would economically prevail in a satisfactory fashion and that these officers did have knowledge of such expectancy of economic advantage, the club having performed in a satisfactory fashion in the city at that location since 1978 and that these defendants, both individually and as representatives of the City of East Orange, wrongfully and without justification, through their actions over that period of time did in fact interfere with the plaintiffs' expectancy of economic advantage and that in the absence of these actions... it would be reasonably probable that the plaintiffs would have realized a continued economic success at that particular location and, further, that the plaintiffs have sustained damages as a result thereof, i.e. the business was rendered impotent and eventually had to close down.

...
The court, therefore finds that a tort has been committed, that the declinethe economic decline of Scandals was as a direct result of that tort being committed, that it was foreseeable the actions of the officials of East Orange and representatives thereof would result in the economic decline and ultimate closure of Scandals and that as a result thereof these plaintiffs, more particularly Mr. Kolczycki and Mr Matarese, have suffered damages.
Consequently, the court entered judgment in favor of plaintiffs against defendants in the amount of $400,000.
While the trial judge appropriately exercised his discretion in suppressing defendants' answer and defenses, we cannot ignore the fact that he specifically wrote in the words "without prejudice"[5] on plaintiffs' form of suppression order. This appears to have been in compliance with the case management order of October 1996. Perhaps it was intended to give effect to the mechanics and policy of R. 4:23-5(a) which provides that an initial suppression order for failure to answer interrogatories be without prejudice subject to a ninety-day cure period, after which, absent compliance, the party entitled to answers may move for an order of suppression with prejudice. We cannot tell. We note that the March 1997 order denying reconsideration did not alter the "without prejudice" provision.
Appeals may be taken only from orders and judgments. Similarly, actions as profound in their effect as a suppression of defenses cannot be informally ordered or informally enforced. Giving literal effect to the order, defendants should not have been barred from any defenses, including that of the statute of limitations, until and unless a "with prejudice" order was entered.
Thus, the issue as to when plaintiffs' cause of action accrued remains critical.
Tort claims against public entities in New Jersey and their employees are governed by the Tort Claims Act, N.J.S.A. 59:1-1 to 59:12-3. Under N.J.S.A. 59:8-8, a claim against a public entity will be barred if a notice of claim is not filed with the public entity within ninety days of the accrual of the claim or if suit is not filed within two years after the accrual.
On the question of accrual, the New Jersey Supreme Court has noted that "the Legislature has not specified when the cause of action shall be deemed to have accrued and the matter has therefore been left entirely to judicial interpretation and administration." Russo Farms, Inc. v. Vineland Bd. of Educ., 144 N.J. 84, 98, 675 A.2d 1077 (1996) (quoting *609 Rosenau v. City of New Brunswick, 51 N.J. 130, 137, 238 A.2d 169 (1968)). The Court explained that "a cause of action accrues on the date when `the right to institute and maintain a suit' first arises." Ibid. The Court further explained that "it is not necessary that the injured party have knowledge of the extent of injury before the statute of limitations begins to run." Id. at 115, 675 A.2d 1077 (quoting P.T. & L. Constr. Co. v. Madigan & Hyland, Inc., 245 N.J.Super. 201, 207, 584 A.2d 850 (App.Div.), certif. denied, 126 N.J. 330, 598 A.2d 888 (1991)).
In Johnson v. Johnson, 92 N.J.Super. 457, 224 A.2d 23 (App.Div.1966), we said that "even though a defendant's answer is stricken for failure to make discovery, the plaintiff may be, as here, precluded from recovery where the proof which he offers in support of his own case reveals a legal defense to his claim." Id. at 465, 224 A.2d 23. In Johnson, the marriage of the parties had been terminated by divorce and in one of the settlement agreements entered into by them, the defendant/ex-husband undertook to indemnify the plaintiff/ex-wife for certain old debts. Id. at 461, 224 A.2d 23. The plaintiff sought recovery of certain charges from defendant pursuant to that agreement. The defendant failed to appear for deposition and his answer was stricken. Ibid. We found that plaintiff's own proofs raised questions as to whether defendant was obligated to pay the plaintiff under the terms of the agreement. We said that despite the fact that the defendant's answer had been stricken, on remand the plaintiff may be precluded from recovery if her proofs revealed that she was not entitled to recovery under the agreement. Id. at 464-65, 224 A.2d 23.
In this case, plaintiffs recounted in their complaint the "systematic pattern of harassment" engaged in by certain employees of the City of East Orange, starting in January 1992, and claimed that
[i]t was equally clear on or about May 22, 1992 that the harassment as above described had had a terminal impact on the Plaintiffs['] future business prospects. The Plaintiffs' patronage had withered, and the income stream from the business directly corresponded to the accelerated harassment suffered by the Plaintiffs at the hands of the various municipal government agencies, political subdivisions, etc. As a result, in June of 1992 the Plaintiffs terminated all payroll and formal business operations.
This paragraph might be read to mean that plaintiffs' cause of action against defendants accrued prior to May 22, 1992 because the "terminal effect" or withering of patronage and income stream from plaintiffs' business could not have suddenly occurred on May 22, 1992, but developed over a period of time and, as plaintiffs put it, "directly corresponded to the accelerated harassment suffered by the plaintiffs" at the hands of the agents of the City of East Orange. In fact, Ms. Adams, Scandals' promoter who was paid a percentage of gate proceeds, testified at the proof hearing that by April 1992, the club's patronage had dwindled and the income stream had decreased due to the harassment by defendants. As defendants argue, the acts complained of, according to the testimony of plaintiffs and their complaint, began and were perceived as a conspiracy to destroy plaintiffs' business prior to May 1992.
The issues then are whether plaintiffs had sufficient basis to institute and maintain a suit against defendants prior to May 23, 1992 and whether plaintiffs' filing of the suit on May 23, 1994 is barred by the two-year limitations period under N.J.S.A. 59:8-8b.
Plaintiffs also claimed in their complaint that on or about May 22, 1992, the "police commissioner or other relevant police authority had made a recommendation to the Bureau of Alcohol Beverage Control ("ABC") that the plaintiffs' liquor license not be renewed" and that "it was at that time that plaintiffs realized that they may now have had a cause of action against the defendants." At the proof hearing, however, plaintiff Matarese testified that he learned of the police department's recommendation regarding Scandals' liquor license in July 1992 when the vice president of the Board of Alcohol Beverage Control informed him that such a recommendation had been made a couple months earlier. Matarese *610 testified that the liquor license was in fact renewed in 1992.
Plaintiffs' reliance on Russo Farms, supra, for the proposition that the date on which a notice of claim is filed marks the accrual date for a cause of action is misplaced. The date that a notice of claim is filed only determines which claims will be allowed under N.J.S.A. 59:8-8a once a plaintiff files a timely complaint under N.J.S.A. 59:8-8b. Russo Farms, supra, 144 N.J. at 106-07, 675 A.2d 1077.
The Russo Farms Court said that a "`wrongful act with consequential continuing damages is not a continuing tort' and does not lengthen the statute of limitations." Id. at 114, 675 A.2d 1077 (quoting Ricottilli v. Summersville Mem. Hosp. 188 W.Va. 674, 425 S.E.2d 629, 632 (W.Va.1992)). Under the continuing tort theory, however, "the focus is not on a breach of duty, but on the conditions at the time of the injury. Because of that focus, each injury allegedly constitutes a new tort, because each injury contains all the elements of a tort, without any need to refer to prior actions to establish liability." Id. at 105, 675 A.2d 1077. In Russo Farms, the Court used the tort of battery to explain the continuing tort theory. It explained that if an individual assaults another person on a continuing basis over a period of several years, each new assault constitutes a battery because the attack itself contains every element of a new tort. Id. at 105-06, 675 A.2d 1077. "If the first attack is barred by the statute of limitations, more recent claims may not be barred because each asserts a new tort." Id. at 106, 675 A.2d 1077.
Thus, on remand, the trial court must determine whether any tortious conduct perpetrated by defendants against plaintiffs that occurred on or after May 22, 1992 constitutes a tort that can stand on its own for the maintenance of a suit against defendants without any need to refer to prior conduct of defendants to establish liability.
In light of Johnson, supra, even if defendants' answer and separate defenses had been stricken with prejudice in this case, plaintiffs could still be denied recovery if their own proofs revealed that their claim is time-barred. This issue can only be determined on remand.
We must reverse and remand the judgment awarding $400,000 to plaintiffs on two grounds. First, because the proof hearing should not have occurred while the suppression order was "without prejudice." Second, the accrual date of plaintiffs' cause of action or any severable portion thereof, must be determined for purposes of the two-year statute of limitations under N.J.S.A. 59:8-8b.
Our reversal of the judgment below renders moot plaintiffs' cross-appeal challenging the trial judge's denial of counsel fees to them on the ground that the existence of a contingency fee arrangement between plaintiffs and their attorney would make such an award a windfall to plaintiffs. A possible issue of attorney's fees remains open, however. Generally, New Jersey policy does not permit imposition of attorney's fees unless authorized by rule, statute, or contract. Under the Tort Claims Act, a trial court has the discretion to award counsel fees where deemed appropriate. See N.J.S.A. 59:9-5.
Moreover, under R. 4:23-2, where a party fails to make discovery authorized by the rule, as here, the trial judge is required to impose "reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." R. 4:23-2.
Since no such justification was found by the trial judge in this case, plaintiffs are entitled to attorney's fees caused by defendants' counsel's failure to provide discovery pursuant to R. 4:23-2. Depending on the results following our remand on the merits, the court may also consider independently the question of counsel fees under N.J.S.A. 59:9-5. See Furey v. County of Ocean, 287 N.J.Super. 42, 670 A.2d 120 (App.Div. 1996)(the existence of a contingency fee arrangement does not preclude the award of reasonable counsel fees under the Tort Claims Act).
NOTES
[1] Salahuddin is the Director of Property Maintenance for the City of East Orange.
[2] In their complaint, plaintiffs claimed that they closed down Scandals in June 1992. However, Ms. Adams testified at the proof hearing that as late as August 1992, she presented a live show at Scandals that attracted only fifteen patrons.
[3] The notice is not part of the record, but was pleaded by both parties.
[4] A letter in the record indicates that on August 27, 1995, plaintiffs propounded initial interrogatories on defendants with a notice of production of documents. In January 1996, upon plaintiffs' inquiry regarding the discovery request, defendants claimed that the discovery request was never received by defendants. Consequently, on February 12, 1996, plaintiffs again served defendants with the interrogatories and notices to produce. Defendants claim that they received these discovery requests on March 26, 1996.
[5] Where an offer or admission is made "without prejudice," or a motion is denied or a bill in equity dismissed "without prejudice," it is meant as a declaration that no rights or privileges of the party concerned are to be considered as thereby waived or lost, except in so far as may be expressly conceded or decided. Black's Law Dictionary 1179 (6th ed.1990).