**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2605-22

PUTNAM AT TINTON FALLS,
LLC,

     Plaintiff-Respondent,

v.

RICHARD ANNUZIATA,
DEBORAH ANNUZIATA,
DAVID GERMAIN, NICHOLAS
KHOUDARY, ESQ., YFM TINTON,
LLC, GARRY SCHECHER,
BOULDER DEVELOPMENT, LLC,
MICHAEL MOLOTCHKO, LMOLO,
LLC, LYDIA MOLOTCHKO,
BERNADETTE REUGG, STEVE
KALEBIC, JAMES LICATA,
BRUCE J. DUKE, VICTORIA
GENTILE, PUTNAM
CONSTRUCTION, LLC, MMR,
LLC, and DAVID CARLEBACH,

     Defendants,

and

MICHAEL ANNUNZIATA,

     Defendant-Appellant.

_____

Submitted June 18, 2024 – Decided July 25, 2024

Before Judges Currier and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1900-12.

Michael Annunziata, appellant pro se.

Abilheira & Associates, PC, attorneys for respondent (Elias Abilheira, on the brief).

PER CURIAM

Defendant, Michael Annunziata, appeals from the trial court's entry of default judgment in favor of plaintiff, Putnam at Tinton Falls, LLC (Putnam) in the amount of $1,500,000, jointly and severally, for a claim of civil conspiracy with other named defendants, and $980,000 against him individually on a claim of conversion. Michael[1] asserts: 1) he was not properly served with the Seventh Amended Complaint; 2) plaintiff failed to establish prima facie claims against him for civil conspiracy and conversion; 3) the trial court erred in allowing the proof hearing to proceed after the conclusion of his brother's bankruptcy proceeding that resolved all claims against Michael; and 4) the court improperly

_____

[1] Because some parties share a common surname, we refer to them by their first name, intending no disrespect.

allowed plaintiff to pierce the corporate veil.[2]  Having reviewed the record before us in light of all applicable legal principles, we are constrained to vacate the judgments entered by the trial court and remand for further proceedings consistent with this opinion.  Defendant remains in default.

I.

An understanding of the tortured litigation history of this matter is necessary.  We discern the following facts from the limited record before us.  In 2009, Richard Annunziata, defendant's brother, entered into an agreement with another party to own and operate Putnam.  The agreement was later modified to include two additional parties, which reduced Richard's percentage of ownership but provided him with an option to buy out the other members of Putnam.  Litigation ensued in 2010, which was sent to arbitration in accordance with Putnam's operating agreement.  Richard agreed to a settlement of $900,000.  In 2011, however, Richard disclaimed the settlement agreement and the parties returned to arbitration.

The arbitrator determined in December 2011 that Richard had "no further membership interest in [Putnam] and no further interest in the assets of [Putnam]

---

[2] Because Michael's corporate veil argument lacks merit as he was not a member of the LLC, we decline to address it in this opinion.  R. 2:11-3(e)(1)(E).

and no further claim to any of the property of [Putnam]." The trial court confirmed the arbitrator's award in early 2012. Nevertheless, Richard continued to disclaim any settlement and disputed his loss of ownership interest in Putnam.

Shortly after the trial court's entry of the arbitration award, in April 2012, Richard mortgaged six of Putnam's townhouses to secure a $1,500,000 loan from YFM Tinton, LLC (YFM). Richard and several other individuals, including his attorney, conspired to give Richard the appearance of owning Putnam and the six townhouses through various acts. Relying on those representations, YFM provided Richard a $1,500,000 loan and obtained mortgages on the six townhouses. Richard spent the loan proceeds personally and distributed the money to his family and co-conspirators. He also took several steps to conceal the loan proceeds, including moving the funds amongst several business entities, a custodial account established for his then-six-year-old son, and an irrevocable trust established for his family's benefit.

YFM foreclosed on the six townhouses when Richard defaulted on the loan, causing Putnam to first learn about the loan and mortgages. Putnam sued Richard, YFM, and a variety of other individuals for, among other things, fraud. On January 23, 2013, the trial court granted partial summary judgment to Putnam against Richard in the amount of $1,500,000 and summary judgment

4

against Richard's attorney "for [his] fraudulent acts in relation to the mortgage transaction with [YFM] . . . ." The trial court's summary judgment order against Richard does not state which cause of action it granted summary judgment on, or the extent of its partial award. The order merely states the court granted summary judgment "for the reasons set forth on the record." Although we do not have the transcript of those proceedings, according to the United States Bankruptcy Court for the District of New Jersey, the summary judgment order against Richard "did not make any findings as to fraud."

Eventually, Putnam and YFM mutually resolved the foreclosure proceedings. Putnam paid YFM $1,300,000 to resolve the mortgage, and YFM assigned to Putnam any remaining claims stemming from the fraudulent loan.

Throughout the subsequent litigation, Putnam repeatedly amended its complaint and added additional defendants as details of the scheme came to light. Putnam amended its complaint for a fifth time on April 1, 2014 (the "Fifth Amended Complaint" or "Complaint"), to include Michael, a resident of New York. The Complaint alleges Michael aided in the fraud after the fact by "receiving the payments of misappropriated funds" but does not allege Michael conspired in the initial fraud that led to the mortgage loan.

A-2605-22

The Complaint mistakenly alleged Michael was resident of New Jersey. Michael does not dispute he was personally served with the Fifth Amended Complaint and failed to file a responsive pleading. The trial court entered default against Michael on October 16, 2014 for the claims alleged in the Fifth Amended Complaint, but reserved entering a default judgment until the claims against the non-defaulting parties in the complaint were fully adjudicated.

In the interim, Richard filed for bankruptcy on February 5, 2015. A Chapter 11 Trustee was appointed, and the Trustee subsequently retained David Bruck to act as her attorney in Richard's bankruptcy. Bruck, acting on behalf of the Trustee, filed an adversarial proceeding naming, among others, Richard and Michael, seeking to avoid certain transactions and recover those funds on behalf of the bankruptcy estate. Relevant here, the second amended adversary complaint Bruck filed on October 17, 2017 in the bankruptcy court lists the Fraudulent Conveyances Act, N.J.S.A. 25:2-1 to -6, the Uniform Fraudulent Conveyance Act (the UFCA), N.J.S.A. 25:2-7 to -19, and the Uniform Voidable

Transfer Act (the UFTA), N.J.S.A. 25:2-20 to -36,[3] as grounds for avoiding the challenged transaction between Richard and Michael.[4]

In October 2016, David Carlebach, one of the named defendants in this matter, removed this case to the bankruptcy court "on the basis that the fraudulent transfer claims asserted by [Putnam] in Count 2 of the Sixth Amended Complaint in the . . . State Court Litigation properly belong to the Trustee." Later that month, the Trustee "filed a [m]otion to remand the . . . [case] back to the Superior Court of New Jersey, on condition that [Putnam] not be permitted to pursue the fraudulent transfer claims it asserted, including the claims now asserted in [the bankruptcy case] . . . , because such claims . . . belong to the Trustee." According to Bruck's Second Amended Complaint in the bankruptcy case, Putnam "through counsel has agreed to dismiss Count 2 of the . . . State Court Litigation so that the Trustee may pursue the fraudulent transfer claims against" the several named defendants, including Richard and Michael.

---

[3] The Legislature renamed the UFTA the "Uniform Voidable Transactions Act" in 2021. L.2021, c. 92, § 28. We use the acronym "UFTA" to for consistency and to avoid confusion with prior decisions.

[4] The UFTA repealed and replaced the Uniform Fraudulent Conveyance Act, see Banco Popular N. Am. v. Gandi, 184 N.J. 161, 175 (2005), which supersedes the Fraudulent Conveyances Act to the extent they are inconsistent. Trus Joist Corp. v. Treetop Assocs., Inc., 97 N.J. 22, 29-30 (1984).

A-2605-22

On December 6, 2017, Bruck, acting on behalf of the Trustee, entered into a "Mediation Settlement Agreement" (MSA) with several parties to the bankruptcy, including Richard and Michael. The MSA states it intends to "serve as a full and final resolution of the Adversary Proceedings . . . as to the Plaintiff, Nancy Isaacson, Chapter 11 Trustee . . . and the settling Defendants . . . ." It states the Trustee "and the settling Defendants have agreed to resolve all claims they may have between them, including, but not limited to, those arising from the Adversary Proceeding in the Richard Annunziata Chapter 11 Case after conclusion of the mediation on December 4, and December 6, 2017." The MSA states it "applies only to the Settling Parties," defined as the Trustee and "the Settling Defendants . . . ."

Michael was one of the settling defendants. Pursuant to the MSA, Michael was to convey property in Connecticut to the Trustee. He and Richard agreed to "the entry of a non-dischargeable judgment against them all, jointly and severally, in the liquidated amount of two hundred and fifty thousand dollars . . . ." The MSA adds "[t]here shall be an exchange of full mutual and general releases between the Trustee and the Settling Defendants."

Having obtained partial summary judgment against Richard and his attorney, Putnam continued to litigate against the answering defendants in this

A-2605-22

case and on March 3, 2022, obtained a judgment against defendants Bernadette Ruegg and David Germain, "jointly and severally, on the Count of Civil Conspiracy in the amount of $1,500,000.00 . . . ."  The judgment also found in plaintiff's favor on its conversion claim against Bernadette Ruegg and David Germain in the amounts of $42,500 and $11,250, respectively.  These judgments were based upon allegations made in the Seventh Amended Complaint.

The trial court then scheduled a proof hearing on Michael's default. Michael opposed plaintiff's motion, alleging he was not served with plaintiff's Seventh Amended Complaint and the entire controversy doctrine precluded any award against him.  The trial court rejected both arguments and held a proof hearing on January 9, 2023.

At the proof hearing Putnam presented the testimony of Richard's estranged wife, Deborah Annunziata, and Bruck to establish its prima facie claims against Michael and damages.

Putnam admitted, in its opening statement, the Fifth Amended Complaint alleged $200,000 on the conversion claim and did not allege Michael was involved in the initial fraud.  Instead, Putnam claimed "Michael . . . participated in the civil conspiracy by laundering the funds that have been established as

being misappropriated by Richard . . ., and preventing plaintiff from being able to recover those funds. . . ."

Deborah admitted she had no first-hand knowledge of any of Putnam's claims against Michael and her testimony consisted solely of "secondhand knowledge from the . . . bankruptcy court." She was aware of two accounts, the Family Trust Account wherein her three children were beneficiaries, and a Unified Trust for Minors Account (UTMA) for her son Vincent. She stated she learned, solely from the bankruptcy court documents, Richard transferred $980,000 from the UTMA account where he was trustee into the Family Trust Account, where Michael was trustee. With respect to her knowledge of any use of the funds once they were transferred into the Family Trust Account, Deborah stated: "[Richard and Michael] bought property. Like, this was all in the bankruptcy case I'm aware of. . . . So, they bought property in Connecticut."

She did not testify as to a specific amount of $980,000 and she testified the funds transferred from the UTMA to the Family Trust Fund were not from Putnam but from another real estate transaction. When specifically asked whether she knew if Michael was involved with the UTMA account, she testified "I don't know if Michael was on it or not." When asked if Michael directed any

10

of the funds be placed in the Family Trust Account she stated: "No, no. . . . I don't have the answer. I don't know what they talked about."

Bruck also testified and admitted it had been five years since he reviewed the records of the bankruptcy. He testified, after having his recollection refreshed, that Richard transferred $749,000 from the UTMA account to the Family Trust Account. He did not have a recollection of any specific act by Michael and testified only as to his conclusion "Michael . . . did whatever his brother Richard . . . told him to do." He testified $500,000 was transferred from the UTMA for the purchase of the Groton, Connecticut property and testified a total of $1,013,142 was transferred out of the UTMA. Asked if Michael had knowledge that funds entrusted to his control in the Family Trust Account were part of the fraudulent mortgage taken by Richard, he responded "I don't have any recollection of that." When pressed, he stated his belief in Michael's culpability was based on nothing "other than that they were brothers and they obviously conspired with each other to basically defraud Richard's creditors." Despite repeated attempts to refresh his recollection with the bankruptcy documents, Bruck was unable to identify any action Michael took with respect to the Family Trust Account or any fact that would enable a court to find Michael participated in the conspiracy.

A-2605-22

At the hearing's conclusion, the trial court observed the case before it was "a case for conspiracy and a case for conversion." It made the following statement regarding the claim for civil conspiracy:

> Michael . . . , in essence, argues [he] wasn't involved in the underlying fraud against [plaintiff]. Maybe true. But [Michael was involved in] everything else thereafter . . . [,] the shell game of hiding that money from [plaintiff]."
>
> . . . .
>
> So, the underlying conspiracy doesn't end when Richard gets [plaintiff's] check. And maybe Michael didn't know what Richard was doing to get that $1.5 million dollars, but Michael was all in on hiding it, moving it from trust account to trust account, and then out the door. And he's the one that's responsible for it.

The trial court then held Michael jointly and severally liable for civil conspiracy as a co-conspirator "based on what was alleged in the complaint, based on what [Deborah] testified to and the review of the documents submitted here . . . and . . . is fully responsible for the [$]1.5 million."

Regarding conversion, the trial court observed Bruck was unable to testify as to any specific quantum of damages for which Michael was responsible. Nevertheless, it found Michael converted $980,000 based on paragraph five of Count 2 of the complaint. The trial court entered a judgment against Michael jointly and severally for the $1.5 million and individually for $980,000.

Michael then filed a motion for reconsideration, which was denied. This appeal followed.

## II.

Where a defendant has defaulted, a court must nevertheless hold a proof hearing and a plaintiff must establish its claims. R. 4:43-2; see also Chakravarti v. Pegasus Consulting Grp., Inc., 393 N.J. Super. 203, 210 (App. Div. 2007) ("Judgment should not be entered without a proof hearing . . . although the question of what proofs are necessary is inherently within the judge's discretion."). Generally, the court need only determine the sufficiency of the allegations. Kolczycki v. City of E. Orange, 317 N.J. Super. 505, 514 (App. Div. 1999). In the context of a proof hearing "trial courts have been directed to view a plaintiff's proofs 'indulgently' . . . and the general practice of our courts has been to require only a prima facie case . . . ." Heimbach v. Mueller, 229 N.J. Super. 17, 20 (App. Div. 1988); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 2.2.2 on R. 4:43-2 (2024) (stating "unless there is intervening consideration of public policy or other requirement of fundamental justice, the judge should ordinarily apply to plaintiff's proofs the prima facie case standard of R. 4:37-2(b) and R. 4:40-1, thus not weighing evidence or finding facts but only determining bare sufficiency"); Kolczycki, 317 N.J. Super. at 514.

Nevertheless, plaintiff may be held to the burden of establishing liability as well as damages, despite a defendant's default. See Johnson v. Johnson, 92 N.J. Super. 457, 465 (App. Div. 1966) ("Even though a defendant's answer is stricken for failure to make discovery, the plaintiff may be . . . precluded from recovery where the proof which he offers in support of his own case reveals a legal defense to his claim."). Although the assertions made in a complaint are deemed true where a defendant is in default, a court may nonetheless require a plaintiff to furnish proof on the issue of liability, as well as damages. Ibid.

When a trial court holds a Rule 4:43-2(b) proof hearing, we defer to the trial court's factual findings and legal conclusions. See Romero v. Gold Star Distrib., LLC, 468 N.J. Super. 274, 302 (App. Div. 2021); Chakravarti, 393 N.J. Super. at 210 (holding "the question of what proofs are necessary" to establish the plaintiff's claim "is inherently within the judge's discretion"). Nevertheless, the "[f]actual findings must establish the entitlement to relief." EnviroFinance Grp., LLC v. Env't Barrier Co., 440 N.J. Super. 325, 343 (App. Div. 2015). We inquire as to whether there is substantial evidence in the record to support the trial court's factual findings and legal conclusions. Romero, 468 N.J. Super. at 302. Legal determinations are not afforded such discretion, and instead are reviewed de novo. See Heimbach, 229 N.J. Super. at 24-26.

## A. Jurisdiction

Michael first argues the court lacks jurisdiction over him because he was a New York resident. However, Michael has waived any jurisdictional argument. He was personally served with the Fifth Amendment Complaint, took no steps to dismiss the Complaint or otherwise preserve lack of jurisdiction as a defense, and, in the intervening nine years since default was entered against him, did not move to vacate default. Moreover, he fully participated, with the benefit of counsel, at the proof hearing. His arguments regarding jurisdiction lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

## B. The Civil Conspiracy Claim

Initially, we note default was entered against Michael as to the Fifth Amended Complaint, not the Seventh Amended Complaint, and all parties concede he was not served with the Seventh Amended Complaint. The Fifth Amendment Complaint does not name Michael in the initial civil conspiracy. To the extent the trial court relied upon the partial summary judgment entered by another judge, and upon the jury's findings after the trial against the answering defendants involving the Seventh Amended Complaint, those findings were in error and cannot serve as the basis for finding Michael

15

participated in a civil conspiracy.  The court did not compare the Fifth Amended Complaint with the versions of the complaint upon which partial summary judgment was granted, or the complaint the jury relied upon, in its findings at the proof hearing.  It did not address the allegations specific to Michael in the Fifth Amended Complaint.

Regardless, we agree with Michael that plaintiff failed to prove a prima facie case for civil conspiracy at the proof hearing.[5]  A claim for civil conspiracy requires "two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages."  Main St. at Woolwich, LLC v. Ammons Supermarket, Inc., 451 N.J. Super. 135, 152 (App. Div. 2017) (quoting Morgan v. U. Cnty. Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364 (App.

---

[5]  Michael's pro se appellate brief concedes this issue was not raised before the trial court and Putnam relies on this concession to assert that we should disregard Michael's argument on appeal.  During the proof hearing, however, Michael's cross-examination of plaintiff's witnesses was directed at this point and in closing specifically asserted the evidence did not present a prima facie case. Due to the nature of a Rule 4:43-2(b) proof hearing, the issues of establishing a prima facie case and damages were the only arguments before the trial court and are properly before us on appeal.  See Regan v. City of New Brunswick, 305 N.J. Super. 342, 355 (App. Div. 1997), overruled on other grounds by Dzwonar v. McDevitt, 177 N.J. 451 (2003).

16

Div. 1993)). There must be an "underlying wrong, which absent conspiracy, would give a right of action." J-M Mfg. Co. v. Phillips & Cohen, LLP, 443 N.J. Super. 447, 457 (App. Div. 2015) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177-78 (2005)).

There was no evidence produced at the proof hearing to establish Michael knew of Richard's efforts to defraud YFM. Plaintiff failed to trace any of the funds Richard placed in the Family Trust Account as received from or originating from the fraudulent mortgage, rather than other assets obtained prior to Richard's fraud. Bruck's unsupported conclusory statements at the proof hearing cannot establish the requisite facts to support a finding that Michael engaged in a civil conspiracy to defraud Putnam.

Plaintiff's complaint alleges two separate but closely related instances of fraud and conspiracy. Plaintiff's first claim alleges fraud in procuring the $1.5 million loan. The Fifth Amended Complaint does not assert Michael participated in this initial fraud and is consistent with the testimony of Deborah and Bruck at the proof hearing. Michael is alleged only to have received the proceeds of Richard's fraud upon Putnam after the fact. The Complaint does not allege Michael agreed or did anything to assist Richard in fraudulently obtaining the $1.5 million loan. None of the testimony adduced at the proof hearing cured

A-2605-22

this deficiency; neither Bruck nor Deborah testified to anything Michael did or agreed to do to enable the fraud. Despite this, and the fact Michael was not named as a defendant in the count of the Fifth Amended Complaint alleging the initial civil conspiracy, the trial court found Putnam had proven a case for civil conspiracy and was liable for the entire $1.5 million loan amount. This finding is not based on substantial, credible evidence in the record.

C.    The Fraudulent Transfer Claims

Putnam secondly claims a separate "conspiracy to defraud" based on fraudulent transfers Richard made to Michael in an effort to thwart his creditors. The evidence at the proof hearing did not demonstrate Michael knew the source of the funds were from Putnam; Deborah's testimony was, in fact, contradictory. Moreover, our review of the limited record before us regarding the bankruptcy case signals Putnam's intention to dismiss this count against Michael.

The record shows Richard transferred assets to the Family Trust Account or his businesses beyond Putnam's reach to avoid collection. Although those funds were not traced to the initial mortgage loan, the complaint may allege a mutual intent by Richard and Michael to defraud and hinder plaintiff's recovery efforts. See Jecker v. Hidden Valley, Inc., 422 N.J. Super. 155, 163-64 (App.

Div. 2011); see also N.J.S.A. 25:2-26. The transfers were made after the debt was incurred and shortly after plaintiff sued Richard. N.J.S.A. 25:2-26.

However, in Bruck's second amended complaint, filed in the bankruptcy proceeding, Putnam agreed to dismiss its claims regarding the fraudulent transfers. According to that complaint, plaintiff agreed those claims belonged to the Trustee in bankruptcy. The subsequent settlement among the Trustee, Richard, and Michael appears to resolve them. We conclude the record before us is insufficient to determine whether the fraudulent claims were wholly severed and resolved by the bankruptcy settlement.

D.    Conversion

Conversion is the "[(1)] wrongful exercise of dominion and control over property [(2)] owned by another [(3)] inconsistent with the owners' rights." Sun Coast Merch. Corp. v. Myron Corp., 393 N.J. Super. 55, 84 (App. Div. 2007) (quoting Port-O-San Corp. v. Teamsters Loc. U. No. 863 Welfare & Pension Funds, 363 N.J. Super. 431, 440 (App. Div. 2003)). While the tort traditionally applies to chattels, money may be converted if the funds are identifiable and belong to the plaintiff. Meisels v. Fox Rothschild LLP, 240 N.J. 286, 304 (2020). A defendant may be liable even if he or she acts in good faith and is ignorant of the owner's rights. Ibid.

19

Putnam's Fifth Amended Complaint alleges in several paragraphs that Michael knowingly received funds originating from the fraudulently obtained loan. The Complaint further alleges Michael transferred those funds to prevent Putnam from recovering the money owed. Paragraph six of Count 2 states Michael "received payments from the misappropriated funds in the amount [] of approximately and likely more than . . . $200,000.00 . . . ."

Ordinarily, a defaulting defendant is deemed to have admitted each factual allegation in a complaint. Heimbach, 229 N.J. Super. at 22. This general rule, however, is inapplicable when "(1) [the] allegations . . . [are] made indefinite or erroneous by other allegations in the complaint [;] (2) [the] allegations . . . [are] contrary to facts of which the court would take judicial notice [;] or (3) [the] allegations . . . [are] contrary to the uncontroverted material in the file of the case." Heimbach, 229 N.J. Super. at 22-23 (quoting Trans World Airlines v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971)).

In its opening statement at the start of the proof hearing, Putnam stated the complaint alleged Michael converted $200,000, which is consistent with the sixth paragraph of the second count. Despite this, the trial court inexplicably awarded plaintiff $980,000 on its conversion claim based on an allegation

20

claiming Richard, not Michael, transferred $980,000 to Richard's son's UTMA account located in fifth paragraph of the same count.

The court based its finding on Bruck's testimony that Michael was the trustee of the Family Trust Fund. That trust, however, is distinct from the UTMA account, where Richard was the trustee. Neither Bruck's testimony, nor that of Deborah, established Michael exercised any control over the UTMA account. There was no testimony as to any funds converted by Michael in the Family Trust Account that were traced to Putnam.

In fact, the quantum of damages awarded by the trial court against Michael is not supported by any findings or the record at the proof hearing. In the default judgment, Putnam obtained two judgments totaling in excess of $2.4 million dollars against Michael personally for the assignment of claims involving a $1.5 million fraudulently obtained loan. The goal of compensatory, or actual, damages "is to restore the plaintiff to the extent possible to the same position he or she was in prior to the occurrence of the wrong." Maul v. Kirkman, 270 N.J. Super. 596, 618 (App. Div. 1994). When actual damages are readily calculable and "the award goes beyond the goal of restoration . . . the award is excessive." Ibid.

In sum, we conclude the trial court failed to make sufficient findings as to Michael's liability pursuant to the claims directed against him in the Fifth Amended Complaint and the quantum of damages attributable to Michael, if any. A trial court must make specific findings with respect to liability and damages. EnviroFinance, 440 N.J. Super. at 343. A proof hearing is not a rubber stamp. See Heimbach, 229 N.J. Super. at 24 n.3 (recognizing that "evidence at a proof hearing may be so inherently incredible that the trial judge is justified in refusing to believe it"); Rosenberg v. Bunce, 214 N.J. Super. 300, 305 (App. Div. 1986) (concluding vacatur was appropriate because of "the uncertainty regarding the merits of [the] plaintiff's claim generated by the vagueness of his complaint").

We affirm the trial court's finding that Michael was properly served with the Fifth Amended Complaint and default was properly entered against him. We vacate the judgments awarding damages against Michael and remand for a new proof hearing before a different judge because the trial judge may be committed to its prior findings. See Freedman v. Freedman, 474 N.J. Super. 291, 308 (App. Div. 2023). Michael remains in default and his participation at the new proof hearing is limited to challenging the evidence presented by plaintiff through cross-examination and opening and closing statements.

On remand, the trial court must determine whether Putnam has provided sufficient evidence of its claims directed specifically against Michael in the Fifth Amended Complaint. If it determines Putnam has proven its claims against Michael, the trial court must determine whether Putnam's claims are barred, in whole or in part, by the bankruptcy settlement. Finally, if the trial court finds the claims are not barred by the bankruptcy settlement, it must make specific findings with respect to the quantum of damages Putnam is entitled to recover from Michael. We take no position regarding the outcome of the proof hearing.

Affirmed in part, reversed in part, and remanded for a new proof hearing before a different judge. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2605-22